**EXHIBIT   1**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
EDMUND J. SUSMAN, JR., and all similarly
situated individuals,

                              Plaintiff,              Case No.: 24 Civ. 1281

              -against-
                                                      **VERIFIED COMPLAINT**

ANN MARIE T. SULLIVAN, M.D. in her official
capacity,

                              Defendant.
-------------------------------------------------------------------x

Plaintiff, EDMUND J. SUSMAN, JR., and on behalf of all similarly situated individuals,

by his attorneys The Bellantoni Law Firm, PLLC, for his Verified Complaint respectfully states:

## NATURE OF THE ACTION

1.      This is an action for declaratory and injunctive relief to remedy the violation of

Plaintiff's constitutional rights as protected by the Second Amendment and the Fourteenth

Amendment right to Due Process codified by the United States Constitution. 42 U.S.C. § 1983.

2.      According to New York State, every individual who seeks and obtains a mental

health evaluation at a hospital is treated as having been "committed to a mental hospital" and

rendered permanently disarmed.

3.      Under the New York State statutes challenged herein, upon an admission to a

hospital for a period of evaluation and observation, individuals are reported to the Office of Mental

Health (OMH) and immediately entered into the state's NICS (National Instant Criminal

Background Check System) reporting database.

4.     Such individuals are improperly reported to NICS as a "prohibited person" under 18 U.S.C. § 922(g)(4) – a person prohibited from possessing, receiving, transferring, and purchasing firearms for having been "committed to a mental institution."

5.     Plaintiff is being improperly reported to NICS as a "prohibited person." This action seeks to preliminarily and permanently enjoin Defendant, as the Commissioner of the Office of Mental Health, from reporting individuals to NICS, like Plaintiff, who were admitted to a hospital for a period of evaluation and observation and then discharged without having been "committed to a mental hospital."

6.     Plaintiff's anticipated conduct – possessing and carrying firearms -  is presumptively protected by the plain text of the Second Amendment.

7.     There is no historical tradition of the government's permanent disarmament of an individual for being evaluated and observed in a hospital setting, but then discharged without being formally "committed to a mental hospital" or adjudicated as insane as those terms have historically and traditionally been interpreted.

8.     New York State's NICS reporting statutes – Mental Hygiene Law § 7.09(j) and 14 NYCRR 543 should be permanently enjoined as they are overbroad, vague, and violative of the Second Amendment. The statutes are also facially unconstitutional as applied to individuals who are admitted under MHL 9.39/9.40 and discharged without being converted to an involuntary commitment under MHL 9.37. The statutes are also unconstitutional as applied to Plaintiff.

9.     Mental Hygiene Law § 7.09(j) and 14 NYCRR 543 further violate the Fourteenth Amendment right to due process, because they provide no measure of notice to individuals that they have been entered into the OMH reporting database and/or that their right to possess firearms has been permanently terminated.

## JURISDICTION AND VENUE

10.     Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331 in that this action arises under the United States Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(3) in that this action seeks to redress the deprivation, under of color of the laws, statutes, ordinances, regulations, customs, and usages of the State of New York, of rights, privileges or immunities secured by the United States Constitution.

11.     This action seeks relief pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983, § 1988. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

## THE PARTIES

12.     Plaintiff EDMUND J. SUSMAN, JR. ("Plaintiff") is a citizen of the United States and a resident of Grand Island, Erie County, State of New York.

13.     Defendant ANN MARIE T. SULLIVAN, M.D. ("Sullivan") sued in her official capacity only, is the Commissioner of the New York State Office of Mental Health (OMH) and the statutory authority over the New York State Office of NICS Appeals and SAFE Act ("NICS Appeals Office").

14.     In her official capacity, Sullivan is statutorily authorized to enforce and implement the Mental Hygiene Law provisions challenged herein, to create policies and procedures for such implementation. In that connection, Sullivan is authorized to implement the equitable relief sought herein and provide the redress sought by Plaintiff.

15.     Neither the New York State laws challenged herein, nor Sullivan, contain a procedure by which individuals who are reported to the OMH reporting database are notified that they (i) are now in the OMH reporting database, (ii) are being reported to the federal NICS database

3

as a person prohibited from possessing, purchasing, receiving, and transferring firearms, and (iii) have been permanently disarmed as a result of a hospital admission.

## CONSTITUTIONAL AND LEGAL FRAMEWORK

### *United States Constitution, amend. II*

16.     "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed." U.S. Const. amend II.

17.     The Second Amendment is fully applicable to the states through the Fourteenth Amendment.  *McDonald v. Chicago*, 561 U.S. 742 (2010) (plurality opinion).

18.     The Second Amendment codified the *preexisting*, guaranteed, and individual right to possess and carry weapons in case of confrontation. *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) (emphasis supplied); accord *NYSRPA v. Bruen*, 597 U.S. 1, 20 (2022).

19.     The "central component" of that right is "individual self-defense." *Bruen,* 597 U.S. at 29 quoting, *McDonald,* 561 U.S at 767 (quoting *Heller*, 554 U.S. at 599).

20.     The Second Amendment is "deeply rooted in this Nation's history and tradition" and fundamental to our scheme of ordered liberty." *McDonald*, 561 U.S at 768.

### *The Test To Be Applied In Second Amendment Challenges*

21.     When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. *Bruen*, 597 U.S. at 24.

22.     To justify its regulation, the government may not simply posit that the regulation promotes an important interest. *Ibid.*

23.     Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. *Ibid*.

24.     Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' *Ibid*.

25.     Here, Plaintiff's proposed conduct -- possessing and carrying firearms for self-defense – is covered by the plain text of the Second Amendment. *Heller*, 554 U.S. at 592 (defining the plain text of the Second Amendment as "guarantee[ing] the individual right to possess and carry weapons in case of confrontation").

26.     To prevail in this action, Defendant must justify the challenged regulations "by demonstrating that [they are] consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17.

27.     *Only* then can the Court conclude that Plaintiff's "conduct falls outside the Second Amendment's 'unqualified command'." *Bruen*, 597 U.S. at 17.

28.     Like a person convicted of a felony, individuals maintained within the OMH reporting database, like Plaintiff, are permanently disarmed.

29.     There is no historical tradition of permanently disarming an individual whose mental state has not deteriorated to the point of being formally adjudicated as "insane," "criminally insane," so out of touch with reality they are "unable to assist in their own defense" and/or otherwise formally adjudicated as "dangerous."

30.     In *United States v. Rahimi*, 144 S. Ct. 1889, 1902 (2024) the Supreme Court identified historical support for temporarily disarming individuals who have been adjudicated by a court as "posing a credible threat to the physical safety of others."

31.     The temporary disarmament of a person who has been adjudicated by a court to pose a credible threat to the physical safety of another person is consistent with the Second Amendment. *Rahimi*, 144 S. Ct. at 1903.

32.     But MHL 7.09(j) and 14 NYCRR 543 are so broad that they require all hospital admissions under Article 9 to be forwarded to, and included in, the OMH reporting database – including those people who are evaluated, observed, and then discharged ("emergency evaluations") under MHL 9.39 and 9.40.

33.     A person admitted to a hospital for an emergency evaluation under MHL 9.39/9.40 and discharged without being "involuntarily committed" (MHL 9.37) has *de facto* been deemed *not* to pose a danger to himself or others.

34.     By the plain language of MHL 9.39, a person is only ***alleged*** to have a mental illness.

35.     Under MHL 9.37, the person has been determined to actually ***have*** a mental illness.

36.     By reporting individuals to NICS who were admitted under MHL 9.39/9.40 for "emergency evaluation" and discharged without being confined under the state's involuntary commitment statutes (MHL 9.27 or 9.37), MHL 7.09(j)(1) and 14 NYCRR 543 violate the Second Amendment.

## STATUTORY FRAMEWORK

37.     Under federal law, an individual who has been "adjudicated as a mental defective or who has been committed to a mental institution" is disqualified from possessing, receiving, purchasing, and/or transferring firearms. 18 U.S.C. 922(d), (g)(4).

38.     Under 18 U.S.C. 922(g)(4), the term "committed to a mental institution" "***does not include*** a person in a mental institution for observation or a voluntary admission to a hospital." (emphasis added).

39.     New York's Office of Mental Health (OMH) maintains a federal NICS reporting database (the "reporting database"); all individuals in the database are reported to NICS as people who have been "adjudicated as a mental defective" and/or "committed to a mental institution."

40.     Every individual reported to the NICS system is considered a "prohibited person" and every subsequent federal background check related to firearms will result in a denial of the firearm transaction.

41.     If an individual is listed in the OMH database that reports to  NICS, their right to possess firearms has been terminated.

42.     Numerous individuals are improperly listed in the NYS database who have **never** been "adjudicated as a mental defective" nor "committed to a mental institution," as that term is understood in the context of Second Amendment rights. See e.g. (pending), *Giannavola v. Lee, M.D. et al*, 6:24-cv-06096-FPG (WDNY); *Richey v. Sullivan*, 1:23-cv-00344-AMN-DJS (NDNY); *D.B. v. Sullivan, MD et al*, 1:22-cv-00282-MAD-CFH (NDNY); *P.D. v. Sullivan, MD*, 7:24-cv-00778-NSR-VR (SDNY).

43.     The Federal Brady Handgun Violence Prevention Act of 1993 ("Brady Act") prohibits any person from selling or otherwise disposing of any firearm or ammunition to any person who has been involuntarily "committed to a mental institution" (18 U.S.C. section 922 (d)(4)) and further prohibits any person who has been involuntarily "committed to a mental institution" from shipping or transporting in interstate or foreign commerce, or possessing in or affecting commerce, any firearm or ammunition; or receiving any firearm or ammunition which

has been shipped or transported in interstate or foreign commerce. See, 18 U.S.C. section 922 (g)(4); 14 NYCRR 543.1(a).

44.     Under the Federal NICS Improvement Amendments Act of 2007, Public Law 110-180, section 105 ("NARIP"), the Brady Act was amended to establish the National Instant Criminal Background Check System (NICS). 14 NYCRR 543.1(b).

45.     NARIP was developed to improve the completeness, automation, and transmission of records to state and federal systems used by the NICS. These include records of criminal history, felony convictions, warrants, protective orders, convictions for misdemeanors involving domestic violence and stalking, drug arrests and convictions, mental health adjudications, and other information that may disqualify an individual from possessing or receiving a firearm under federal law.[1]

46.     The NICS Index contains records provided by local, state, and federal agencies about persons prohibited from receiving firearms under federal law.

47.     NICS contains records concerning certain events, such as criminal convictions and mental health adjudications that may disqualify a person from purchasing a firearm.

48.     All records in the NICS Index are considered "federally disqualifying records" and will prohibit the transfer of a firearm. 14 NYCRR 543.1(b).

49.     Under NARIP, New York State receives money from the federal government for reporting its citizens to NICS.

*The Gun Control Act – 18 USC 922(g) – Mental Health Disqualifying Events / Conditions*

50.     The Gun Control Act (GCA), codified at 18 U.S.C. § 922(g), makes it unlawful for certain categories of persons to ship, transport, receive, or possess firearms or ammunition, to

---

[1] https://bjs.ojp.gov/programs/nics-improvement-amendments-act#7k6m7f

include any person, including individuals who have been adjudicated as a mental defective or have been committed to any mental institution.[2]

51.     Under federal law, "Committed to a mental institution" means "[a] formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. 27 C.F.R. § 478.11.

52.     Under federal law, the term "committed to a mental institution" "**does not include** a person in a mental institution **for observation or a voluntary admission** to a mental institution." (emphasis added). See, 27 C.F.R. § 478.11.

***OMH Transmission of Mental Health Records to NICS***

53.     New York Mental Hygiene Law § 7.09[3] authorizes the Office of Mental Health (OMH) to collect, retain, modify, or transmit data or records for inclusion in the NICS system for the purpose of responding to NICS queries regarding attempts to purchase or otherwise take possession of firearms, as defined in 18 U.S.C. 921(a)(3).[4]

54.     The records which OMH is authorized by law to collect, retain, modify, or transmit are expressly limited to persons who have been "involuntarily committed" pursuant to article 9 or 10 of the Mental Hygiene Law, article 730 or section 330.20 of the Criminal Procedure Law, section 402 or 508 of the Correction Law or section 322.2 or 353.4 of the Family Court Act.[5]

---

[2] https://www.atf.gov/firearms/identify-prohibited-persons
[3] NY MHL 7.09(j)(1).
[4] 14 NYCRR § 543.1(c).
[5] 14 NYCRR § 543.1(c) (emphasis added).

9

55.     Under MHL § 7.09 (j)(1) the OMH Commissioner, Defendant Sullivan, in cooperation with other applicable state agencies, shall collect, retain or modify data or records, and shall transmit such data or records to (1) DCJS or to the FBI Criminal Justice Information Services Division (CJIS) for the purposes of responding to queries to the NICS system regarding attempts to purchase or otherwise take possession of firearms, as defined in 18 USC 921(a)(3), in accordance with applicable federal laws or regulations, or (2) DCJS, which may re-disclose such data and records only for determining whether a license issued pursuant to Penal Law § 400.00(11) should be denied, suspended or revoked or for determining whether a person is no longer permitted under federal or state law to possess a firearm. Such records, which may not be used for any other purpose, **shall include only** names and other non-clinical identifying information **of persons who have been involuntarily committed to a hospital** pursuant to MHL Article 9.[6, 7]

56.     The records transmitted to NICS and CJIS[8] by OMH are considered by NICS to be "federally disqualifying records" and will prohibit the transfer of a firearm to such individual. 14 NYCRR 543.1(b).

57.     Upon being contacted by a Federal firearm licensee (FFL) prior to transferring a firearm, NICS will provide information on whether a person is prohibited from receiving or possessing a firearm under State or Federal law. 14 NYCRR 543.1(b).

---

[6] "[O]r section four hundred two or subdivision two of section five hundred eight of the correction law, or article seven hundred thirty or section 330.20 of the criminal procedure law or sections 322.2 or 353.4 of the family court act, or to a secure treatment facility pursuant to article ten of this chapter." NY MHL § 7.00(j)(1).

[7] Such records, which may not be used for any other purpose, shall include only names and other non-clinical identifying information of persons who have been involuntarily committed to a hospital pursuant to article nine of this chapter, or section four hundred two or subdivision two of section five hundred eight of the correction law, or article seven hundred thirty or section 330.20 of the criminal procedure law or sections 322.2 or 353.4 of the family court act, or to a secure treatment facility pursuant to article ten of this chapter.

[8] References to NICS and CJIS are collectively referred to hereafter as "NICS".

58.     Prior to the transfer of a firearm through an FFL, an individual is required to complete ATF Form 4473, "Firearms Transaction Record" (Form 4473).[9]

59.     Question 21(f) of Form 4473 is, "Have you ever been adjudicated as a mental defective OR have you ever been <u>committed</u> to a mental institution?" (emphasis added).[10]

60.     The Form 4473 "NOTICES, INSTRUCTIONS, AND DEFINITIONS…Question 21(f)" provides,

> **"Committed to a Mental Institution:** A formal commitment of a person to a mental question by a court, board, commission, or other lawful authority. The term Permanent resident aliens and aliens legally admitted to the United States pursuant includes a commitment to a mental institution involuntarily. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. **The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution.** (emphasis added).

61.     An individual who has been admitted to a mental institution voluntarily has neither been "committed to a mental institution" nor "involuntarily committed."

62.     An individual who has been admitted to a mental institution for "emergency observation and evaluation" has neither been "Committed to a Mental Institution" nor "involuntarily committed." See, MHL § 9.39, § 9.27, § 9.37, 27 C.F.R. § 478.11. See, *Montgomery v. Cuomo*, 291 F. Supp. 3d 303, 314 (W.D.N.Y. 2018) (the term "committed to a mental institution" "does not include [the placement of] a person in a mental institution for observation or a voluntary admission to a mental institution.").

---

[9] https://www.atf.gov/firearms/docs/4473-part-1-firearms-transaction-record-over-counter-atf-form-53009/download
[10] Upon performing a background check, NICS will provide the FFL with one of 3 responses: "Proceed", "Deny" or "Delay". If an individual is listed in the NICS database as a person prohibited from purchasing, possessing, and/or receiving firearms (a "prohibited person"), NICS will issue a "Deny", which indicates to the FFL that the individual is prohibited from receiving and/or possessing firearms under state or federal law. A "Deny" response prohibits the FFL from transferring a firearm to such individual.

63.     Under MHL 9.39, an individual "Emergency admissions for immediate observation, care, and treatment", a hospital "may receive and retain therein as a patient for a period of fifteen days any person **alleged** to have a mental illness for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or others." (emphasis added).

64.     An admission under MHL 9.39 "Emergency admissions for immediate observation, care, and treatment" does not fall within the definition of having been "Committed to a Mental Institution."

65.     An admission under MHL 9.39 is not a finding or adjudication (formal or otherwise) that an individual *has* a mental illness.

66.     Persons admitted to a hospital for evaluation and observation, and/or voluntarily, are not within the purview of 18 U.S.C. 922(g)(4).

67.     Even if a **court** were to determine that there was "reasonable cause" to confine an individual under MHL 9.39, "such order entered by the court **shall not be deemed to be an adjudication that the patient is mentally ill**," but only a determination that there is reasonable cause to retain the patient for evaluation and observation. (emphasis added); see, MHL 9.39(a)(2).

68.     OMH is maintaining the identifying information of people in the OMH database and reporting them to NICS as "prohibited people," like Plaintiff, who do not fall within MHL 7.09(j), 14 NYCRR 543, or 27 C.F.R. § 478.11.

69.     By the plain language of the statutes, MHL 9.27[11] and 9.37[12] are the involuntary commitment statutes, not MHL 9.39 or 9.40.

---

[11]Entitled, "Involuntary Admission on Medical Certification."
[12]Entitled, "Involuntary Admission on Certificate of a Director of Community Services or His Designee."

70.     Under MHL 9.37, the director of community services or the director's designee can involuntarily commit a person who, in his/her opinion, "**has** a mental illness for which immediate inpatient care and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or herself or others."

71.     By its plain terms, MHL 9.39, entitled "Emergency Admissions for Immediate Observation, Care, and Treatment" is not an adjudication of mental illness.[13]

72.     Where an individual has been admitted to a hospital under MHL 9.39 for a period of evaluation and observation and then discharged, like Plaintiff was, without any conversion to an involuntary commitment under MHL 9.37, reporting them to NICS as a "prohibited person" violates the Second Amendment.

73.     By categorizing every MHL 9.39/9.40 admission to be within the *sui generis* of dangerous conditions warranting permanent disarmament, New York is prematurely terminating the Second Amendment right.

## MATERIAL FACTS

### *Plaintiff's Background*

74.     Plaintiff, age 50, is a resident of Erie County, New York.

75.     Plaintiff has been regularly armed with a firearm personally and/or in his employment capacity for over 30 years, without incident.

76.     Plaintiff, whose military service exceeds 22 years, received an Honorable Discharge from the Army.

---

[13] MHL 9.40, entitled, "Emergency observation, care and treatment in comprehensive psychiatric emergency programs" is the MHL 9.39 equivalent to admissions in a hospital CPEP. Herein, 9.39 and 9.40 are used interchangeably.

77.     Plaintiff has over 29 years of combined federal civilian and military service including active-duty experience in Operation Iraqi Freedom (2006 - Ramadi).

78.     Plaintiff has served as an instructor of armor tactics, military skills, anti-terrorism/force protection procedures, CI, and multiple lethal and non-lethal weapons systems.

79.     Plaintiff is currently employed as a Special Agent with the Bureau of Diplomatic Security, under the U.S. Department of State.

80.     Plaintiff serves as a Liaison Agent to FBI Joint Terrorism Task Force, Buffalo, NY.

81.     Plaintiff serves on protective details for senior U.S. and foreign diplomats in the U.S. and abroad, including high threat environments, conducts advance security surveys and site assessments, including emergency procedures.

82.     In his current position, Plaintiff is responsible for conducting complex and sensitive investigations involving terrorist activities, threats, and incidents directed against U.S. citizens, U.S. Government (USG) personnel and diplomatic facilities abroad.

83.     Plaintiff conducts Protective Intelligence Investigations (PII) into threat activity directed against the Secretary of State, other U.S. officials, international organizations, foreign officials, and diplomatic facilities in the U.S. and abroad.

84.     Plaintiff monitors and interprets sensitive intelligence to corroborate, develop, and expand information regarding threats against foreign diplomatic and consular personnel and facilities in the U.S. and abroad.

85.     Plaintiff participates and maintains liaison with other USG agencies having statutory responsibilities in national security, intelligence, and criminal investigation matters.

86.     Plaintiff's Federal Employment Status is Excepted Service, U.S. Department of State, FS-03 (GS-13 equivalent).

87.    In his current employment, Plaintiff holds Active Top Secret clearance issued by the U.S. Department of State.

88.    Plaintiff is a federal law enforcement officer who carries a firearm as part of his job duties.

89.    From 1994 through 2018, Plaintiff held the rank of Intelligence Officer (Captain), U.S. Army at which time be received an Honorable Discharge from the Army.

90.    Plaintiff managed company and battalion-level programs and was primarily charged with providing all-source intelligence assessments on foreign intelligence and security services capabilities for various audiences at the tactical, operational and strategic levels.

91.    Plaintiff is currently a retired commissioned intelligence officer with the U.S. Army Reserve.

92.    Between 2002 and 2006, Plaintiff served as an Operations Officer with the U.S. Department of Homeland Security where he was responsible for operational and security related program management.

93.    From 2006 to the present, Plaintiff has been employed as a Special Agent, U.S. Department of State, Bureau of Diplomatic Security, managing a broad range of security and intelligence programs to ensure the security of Foreign Service personnel, property, and sensitive information at US diplomatic missions.

94.    Between 2019 and 2021, Plaintiff was assigned as a Special Agent, U.S. Department of State, Bureau of Diplomatic Security Marine Security Guard (MSG) Desk Officer and Senior Investigator, DS HQS, Rosslyn, VA.

95.     Plaintiff has never been arrested, and owns multiple handguns, rifles, and shotguns, which were purchased from a federal firearm licensee (FFL) after undergoing and passing a federal background check through NICS.

96.     As part of his employment with the federal government, Plaintiff has undergone and passed intensive background checks to achieve high-level security clearance, including his Active Top Secret Clearance.

### November 2024 NICS Denial

97.     On November 22, 2024, Plaintiff went to an FFL to purchase a firearm, where he underwent a NICS background check.

98.     Plaintiff's purchase was denied by NICS.

99.     Having no idea why his transaction would be denied, Plaintiff promptly appealed the denial to the NYS Attorney General's Office through Background.Check@ag.ny.gov.

100.    Plaintiff was informed by the NYS Attorney General's Office that his transaction "was denied under 18 United States Code s. 922(g)(4), which prohibits a person who has been adjudicated as a mental defective or has been committed to a mental institution at 16 years of age or older from possessing a firearm."

101.    Plaintiff has never been adjudicated as a mental defective.

102.    Plaintiff has never been committed to a mental institution.

### Voluntary Hospital Evaluation – Close to A Decade Ago

103.    In 2015, Plaintiff sought to discuss some personal issues with a counselor; at Plaintiff's request his wife drove him to a hospital in New York State for an evaluation.

104.    At that time, Plaintiff was experiencing suicidal ideations.

105.    Plaintiff had not - at that time or ever - taken any steps to harm himself.

16

106.    Plaintiff had no plan to harm himself.

107.    Plaintiff simply sought to speak with someone.

108.    Plaintiff was observed and evaluated at the hospital's emergency room CPEP (Comprehensive Psychiatric Emergency Program).

109.    Plaintiff's legal admission status remained under MHL 9.39/9.40 for evaluation and observation at the emergency room CPEP.

110.    Plaintiff voluntarily admitted himself to CPEP on a Thursday.

111.    Plaintiff remained at CPEP and was never converted to a MHL 9.37 "Involuntary admission" to a mental health facility.

112.    Plaintiff was discharged from CPEP and was never converted to a MHL 9.37 "Involuntary admission" to a mental health facility.

113.    Plaintiff has never been adjudicated by any court or other formal body as being a "dangerous" individual or "insane."

114.    Within days, Plaintiff was discharged.

115.    At the time that Plaintiff was discharged, he was determined by a psychiatrist specifically **not** to be a danger to himself or others.

116.    Plaintiff was not provided with any notice that, by voluntarily admitting himself to CPEP to speak with someone he was forfeiting his Second Amendment rights.

117.    Had Plaintiff known that New York would terminate his Second Amendment rights simply because he voluntarily went to CPEP to speak with someone, he never would have asked his wife to drive him there.

118.    Plaintiff was never provided with notice, or informed by CPEP, OMH (or anyone else) that he had been reported to OMH and is now listed in NICS as a "prohibited person."

119.    New York statutes, including MHL 7.09(j) and 14 NYCRR 543, do not require OMH to provide notice to an individual, including Plaintiff, that he is now listed in the OMH database and/or reported to NICS as a "prohibited person."

120.    New York's failure to provide notice to an individual, including Plaintiff, that they have been permanently disarmed violates the Fourteenth Amendment right to Due Process.

121.    OMH's reporting of Plaintiff to NICS as a "prohibited person" violates the Second Amendment.

122.    Plaintiff has successfully undergone federal high-level security clearance background checks, without incident, since his 2015 CPEP admission.

123.    Meaning that, OMH has only recently begun to report Plaintiff to NICS, NYSP and other federal law enforcement agencies.

124.    Plaintiff has never been "committed" or adjudicated as "insane" as required by this Nation's history and tradition to warrant permanent disarmament.

125.    Plaintiff's 2015 admission was not a "commitment to a mental institution" under 27 C.F.R. § 478.11, 18 U.S.C. 922(g)(4), or any New York State statute.

126.    Plaintiff's 2015 admission was not a "commitment to a mental institution" as that phrase is interpreted in the context of Second Amendment rights.

***Plaintiff's Appeal of his NICS Denial***

127.    It is well-settled that no § 1983 plaintiff is required to pursue state remedies before pursuing a lawsuit for constitutional violations, as Plaintiff is doing here. *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 498 (1982) (cases cited) ("Even if there were a state remedy, exhaustion of state administrative remedies is a not prerequisite to an action under 42 U.S.C. §

1983); *Damico v. California*, 389 U.S. 416 (1967); see also, *Steffel v. Thompson*, 415 U.S. 452, 472–473 (1974).

128.    Other than the events described herein, Plaintiff has never previously been prohibited from purchasing or possessing firearms under federal or state law and has no federal or state prohibitions to firearm possession.

129.    Other than the events described herein, Plaintiff has never received a "Denied" response from a NICS background check.

130.    Plaintiff has lawfully owned firearms for decades, without incident, personally and professionally.

131.    As noted above, after receiving a "Denied" to his November 22, 2024 NICS background check, Plaintiff submitted an online appeal to the NYSP, which led to an appeal to the New York State Attorney General's Office ("A.G.'s Office").

132.    Plaintiff informed the A.G.'s Office that he is a State Department employee, frequently travels internationally on official U.S. Government business, which is true. Plaintiff also informed the A.G.'s Office that he is now being pulled for secondary inspection at ports of entry as a result of the NICS reporting,[14] which is true.

133.    Plaintiff also informed that he frequently travels armed while on official duty as authorized by his Department and now cannot do so due to the NICS reporting by New York State, which is rendering Plaintiff unable to perform his official duties, which is true.

134.    The A.G.'s Office conceded that it sounds like Plaintiff was "voluntarily" admitted to the hospital, which should not be reported to NICS.

---

[14] Where a U.S. Customs and Border Protection (CBP) officer at the port of entry cannot verify an individual's information, a CBP officer may direct the individual to an interview area known as "secondary inspection." Secondary inspection allows inspectors to conduct additional research to verify information without causing delays for other arriving passengers.

135.    Yet, OMH continues to report Plaintiff to NICS, the NYSP, and other law enforcement agencies as a "prohibited person."

136.    Plaintiff proceeded to diligently attempt to obtain his medical records from the hospital, which were not provided to him until December 24, 2024.

137.    Plaintiff's federal complaint and motion for a preliminary injunction followed as expeditiously as possible.

138.    In addition to the foregoing, neither MHL 9.39 nor 9.40 contemplate nor address the issue of whether a person who threatens suicide is "mentally ill."

139.    New York law has recognized a critical distinction between those who end their life in a rational state of mind and those who do so as a result of a mental illness – "[s]uicide involves the deliberate termination of one's existence, while in the possession and enjoyment of his mental faculties. Self-slaughter by an insane man or a lunatic is not an act of suicide within the meaning of the law." *Hines v. Doe*, No. 951-23, 2023 WL 2320234, at *3 (N.Y. Sup. Ct. Mar. 1, 2023) (concluding that "a suicidal ideation or attempt is not mental illness per se") quoting, *Breasted v Farmers' Loan & Trust Co.*, 4 Hill 73, 75 (Sup Ct 1843); and citing, *Myers v Schneiderman*, 30 NY3d 1, 12 (2017) (implying that suicide, by definition, must bear the indicia of rationality: suicide has long been understood as "the act or an instance of taking one's own life voluntarily and intentionally) (emphasis supplied); The Earliest Acts and Laws of the Colony of Rhode Island and Providence Plantations 1647-1719, p 19 (J Cushing ed 1977) (noting that as early as 1647 Rhode Island made a distinction between rational suicide and suicide with mental illness: "[if a man] kills himself of a premeditated hatred against his own life: . . . his goods and chattels are the king's custom; but in case he be an infant, a lunatic, or mad, he forfeits nothing") (emphasis supplied).

140.     To find that an emergency evaluation and observation under MHL 9.39/9.40 is the equivalent of a "commitment" warranting permanent disarmament means that no non-actionable period of evaluation and observation exists in New York State.

141.     According to New York law, every time a person is admitted to a hospital for a period of evaluation and observation, the Second Amendment is forfeited.

142.     New York's firearm regulations relating to mental health, as described herein, have no historical analogue.

143.     As a result of the challenged regulations, Plaintiff has been caused to suffer economic damages, compensatory damages, nominal damages, the permanent loss of his Second Amendment rights, the violation of his Fourteenth Amendment right to due process, loss of property (firearms), and loss of the use and enjoyment of his property (firearms).

144.     The overbreadth of MHL 7.09(j) and 14 NYCRR 543 has caused Plaintiff to be reported to OMH, NICS, the New York State Police and other law enforcement agencies for the purpose of – and having the effect of – permanently disarming Plaintiff.

145.     The continued retention of Plaintiff's identifying information in the OMH reporting database and Defendant's continued reporting of Plaintiff to NICS as a "prohibited person" will continue to violate Plaintiff's Second Amendment rights.

146.     Defendant will continue to enforce the challenged regulations, which presents an absolute barrier to Plaintiff's exercise of conduct presumptively protected by the Second Amendment.

147.     Plaintiff's permanent disarmament will continue without the relief sought herein.

## AS AND FOR A FIRST CAUSE OF ACTION

**[Second Amendment [through the Fourteenth Amendment]], 42 U.S.C. § 1983]**

148.    Repeats and realleges paragraphs 1 through  147 as if set forth in their entirety herein.

149.    Under the theory that MHL 7.09(j) and 14 NYCRR 543 are overbroad in violation of the Second Amendment, facially and as applied. 42 U.S.C. § 1983.

## AS AND FOR A SECOND CAUSE OF ACTION

**[Second Amendment [through the Fourteenth Amendment]], 42 U.S.C. § 1983]**

150.    Repeats and realleges paragraphs 1 through 149 as if set forth in their entirety herein.

151.    Under the theory that MHL 7.09(j) and 14 NYCRR 543 violate the Second Amendment, facially and as applied. 42 U.S.C. § 1983.

## AS AND FOR A THIRD CAUSE OF ACTION

**[Fourteenth Amendment, 42 U.S.C. § 1983]**

152.    Repeats and realleges paragraphs 1 through 151 as if set forth in their entirety herein.

153.    Under the theory that MHL 7.09(j) and 14 NYCRR 543 violate the Fourteenth Amendment right to Due Process. 42 U.S.C. § 1983.

WHEREFORE, Plaintiff respectfully requests that this Court issue a judgment and order:

- Declaring that Mental Hygiene Law 7.09(j) and 14 NYCRR 543 unconstitutionally vague and overbroad, in violation of the Second Amendment;

- Declaring Mental Hygiene Law 7.09(j) and 14 NYCRR 543 facially unconstitutional as applied to MHL 9.39/9.40 (CPEP) admissions, in violation of the Second Amendment;

- Declaring Mental Hygiene Law 7.09(j) and 14 NYCRR 543 unconstitutional as applied to Plaintiff, in violation of the Second Amendment;

- Declaring Mental Hygiene Law 7.09(j) and 14 NYCRR 543 violate the Fourteenth Amendment right to Due Process;

- Preliminarily and permanently enjoining Defendant, her agents, and all others working in concert with her, from enforcing MHL 7.09(j) and 14 NYCRR 543 against individuals who were admitted to a hospital under MHL 9.39/9.40 (CPEP) then discharged without being converted to a MHL 9.27 or 9.37 under New York's involuntary commitment statutes 9.27/9.37;

- Preliminarily and permanently enjoining Defendant, her agents, and all others working in concert with her, from enforcing MHL 7.09(j) and 14 NYCRR 543 against Plaintiff;

- Awarding Plaintiff nominal damages;

- Declaring that Plaintiff is the prevailing party of this action for purposes of an award of reasonable attorney's fees under 42 U.S.C. § 1988;

- Awarding Plaintiff reasonable statutory attorney's fees under 42 U.S.C. § 1988;

- Awarding Plaintiff costs and disbursements; and

- Such other, further, and different relief as this Court may deem just and proper.

Dated: December 30, 2024
      Scarsdale, New York

                     THE BELLANTONI LAW FIRM, PLLC
                     *Attorneys for Plaintiff*

By:    *Amy L. Bellantoni*
              Amy L. Bellantoni, Esq.
              2 Overhill Road, Suite 400
              Scarsdale, New York 10583
              abell@bellantoni-law.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
EDMUND J. SUSMAN, JR., and all similarly
situated individuals,

                          Plaintiff,               Case No.: 24 Civ.

       -against-

                                          **DECLARATION OF**
                                          **EDMUND J. SUSMAN, JR.**
ANN MARIE T. SULLIVAN, M.D. in her official
capacity,

                         Defendant.
-----------------------------------------------------------------x

Plaintiff, EDMUND J. SUSMAN, JR., and on behalf of all similarly situated individuals,

declares pursuant to 28 U.S.C. § 1746 that:

     1.     I am the plaintiff in the above-captioned matter. I make this declaration based on

my personal knowledge and, if called as a witness, I would and could testify consistently herewith.

     2.     I submit this Declaration in support of our  motion for a preliminary injunction.

Specifically, I am requesting that this Court enjoin Defendant's enforcement of MHL 7.09(j) and

14 NYCRR 543 as applied to me during the pendency of this litigation.

     3.     I am a resident of Erie County, New York. Other than the enforcement of

unconstitutional regulations against me by New York State detailed in the Verified Complaint, I

am not prohibited by state or federal law from possessing, receiving, owning, or purchasing

firearms.

     4.     I am a law-abiding person and possess handguns, rifles, and shotguns, which I

lawfully purchased after being subjected to and passing federal background checks through the

National Instant Criminal Background Check System (NICS).

5.    I have read the Verified Complaint filed in this matter, the allegations of fact are true to the best of my knowledge. In addition to the allegations contained therein, the Court should note that I have never been adjudicated as "mentally defective" nor have I been formally committed to a mental hospital. I have also never been adjudicated as being a "dangerous" individual.

6.    I intend to continue possessing my firearms notwithstanding Defendant's enforcement of the challenged New York State firearm regulations related to mental health. Carrying a firearm is an essential function of my employment as a Special Agent with the Bureau of Diplomatic Security, under the U.S. Department of State and my position as a Liaison Agent to FBI Joint Terrorism Task Force in Buffalo, NY. I also intend to continue to possess and carry my previously owned firearms for self-defense.

7.    By enforcing the challenged New York State regulations, which have caused me to be reported to the NICS database, the NYSP, and other law enforcement agencies as a "prohibited person," Defendant compromises my national security clearances and assignments. Defendant's enforcement of the challenged regulations has directly caused the revocation of my Global Entry status.

8.    Defendant's enforcement of the challenged regulations exposes me to federal and state criminal penalties, prevents me from acquiring new firearms, and prevents me from possessing and carrying firearms for self-defense.

9.    I intend to continue possessing and carrying my firearms, for employment and self-defense. However, I face an imminent threat of arrest by the New York State Police, the FBI, and other law enforcement agencies because Defendant is falsely reporting me as a "prohibited

person." The only barrier to my possession, purchase, receipt, and transfer of firearms is Defendant's enforcement of the challenged regulations.

10.    Enjoining Defendant from enforcing the challenged regulations against me will prevent my personal identifying information from being reported to NICS, the NYSP, and other law enforcement agencies as a "prohibited person," which will remove the threat of arrest against me and lift the existing and absolute barrier to my possession, purchase, receipt, and transfer of firearms.

The foregoing is true and accurate under the penalty of perjury.

Dated: December 30, 2024

_____
Edmund J. Susman, Jr.

3