UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
EDMUND J. SUSMAN, JR., and all similarly
situated individuals,

                                Plaintiff,                Case No. 1:24-cv-01281-LJV

           -against-


ANN MARIE T. SULLIVAN, M.D. in her official
capacity,

                                Defendant.
------------------------------------------------------------------x




# MEMORANDUM OF LAW  IN SUPPORT OF

# PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING

# ORDER AND PRELIMINARY INJUNCTION







**THE BELLANTONI LAW FIRM, PLLC**
***Attorneys for Plaintiff***
**2 Overhill Road, Suite 400**
**Scarsdale, New York 10583**
**abell@bellantoni-law.com**

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................... i

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 1

LEGAL ARGUMENT ......................................................................................................... 5

I. PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF ................................ 6

    A.Plaintiff Is Suffering an Injury-in-Fact ................................................................ 7

    B. Plaintiff's Injury – Permanent Disarmament - is Traceable to Defendant ................. 8

    C. Plaintiff's Intent to Violate the Statutes ................................................................ 8

    D. Plaintiff's Harm is Redressable by a Favorable Judicial Decision ........................... 9

II.PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION ....................................10

    A. Plaintiff is Suffering Irreparable Harm ................................................................. 10

    B. Plaintiff Is Substantially Likely To Succeed on the Merits of His Claims .............. 12

    C.Preliminary Injunction is in the Public Interest......................................................... 16

CONCLUSION..................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adam v. Barr*,
  792 F. App'x 20 (2d Cir. 2019) ................................................................... 7

*Antonyuk v. Hochul*,
  635 F. Supp. 3d 111 (N.D.N.Y. 2022) ....................................................... 6

*Antonyuk v. James*,
  120 F.4th 941 (2d Cir. 2024) ..................................................................... 9

*Arizona Dream Act Coalition*,
  757 F.3d 1053 (9th Cir. 2014) ................................................................. 16

*Babbitt v. Farm Workers*,
  442 U.S. 289 (1979) .................................................................................. 7

*Breasted v Farmers' Loan & Trust Co.*,
  4 Hill 73 (Sup Ct 1843) ..................................................................... 15, 17

*Brenntag Int'l Chems., Inc. v. Bank of India*,
  175 F.3d 245 (2d Cir. 1999) ................................................................... 11

*Care Comm. v. Arneson*,
  638 F.3d 621 (8th Cir. 2011) ................................................................... 10

*Cayuga Nation v. Tanner*,
  824 F.3d 321 (2d Cir. 2016) ..................................................................... 7

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
  598 F.3d 30 (2d Cir. 2010) ..................................................................... 10

*Connecticut Dep't of Envtl. Prot. v. O.S.H.A.*,
  356 F.3d 226 (2d Cir. 2004) ................................................................... 12

*Connecticut State Police Union v. Rovella*,
  494 F. Supp. 3d 210 (D. Conn. 2020) ....................................................... 6

*Consumer Data Indus. Ass'n v. King*,
  678 F.3d 898 (10th Cir. 2012) ................................................................. 10

*D.C. v. Heller*,
  554 U.S. 570 (2008) ..................................................................... 4, 16, 18

i

*Davis v. Federal Election Comm'n*,
 554 U.S. 724 (2008) .................................................................... 6, 7

*Duncan v. Bonta*,
 265 F Supp.3d 1106 (2017) ............................................................ 12

*Elrod v. Burns*,
 427 U.S. 347 (1976) ...................................................................... 11

*Espinoza v. Montana Dept. of Revenue*,
 591 U.S. 464 (2020) ...................................................................... 13

*Ezell v City of Chicago*,
 651 F3d 684 (7th Cir 2011) ............................................................ 12

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
 559 F.3d 110 (2d Cir. 2009) ...................................................... 10, 11

*Grace v. District of Columbia*,
 187 F. Supp. 3d 124 (DDC 2016) ................................................... 12

*Heller v. District of Columbia*,
 670 F.3d 1244 (D.C. Cir. 2011) ...................................................... 13

*Hines v. Doe*,
 2023 WL 2320234 (N.Y. Sup. Ct. Mar. 1, 2023) ........................ 15, 17

*Hobby Lobby Stores, Inc. v. Sebelius*,
 723 F.3d 1114 (10th Cir. 2013) ...................................................... 18

*J.S.R. by & through J.S.G. v. Sessions*,
 330 F. Supp. 3d 731 (D. Conn. 2018) ............................................. 16

*Jolly v. Coughlin*,
 76 F.3d 468 (2d Cir. 1996) ............................................................ 12

*Kamerling v. Massanari*,
 295 F.3d 206 (2d Cir. 2002) ........................................................... 11

*Kelly v. Honeywell Int'l, Inc.*,
 933 F.3d 173 (2d Cir. 2019) ............................................................. 6

*Krick v. Town of Lyons, New York*,
 2024 WL 2240088 (W.D.N.Y. May 17, 2024) ................................... 6

ii

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ............................................................................ 6, 7

*McDonald v. City of Chicago,*
   561 U.S. 742 (2010) ......................................................................... 11, 18

*Ms. L. v. U.S. Immigr. & Customs,*
   415 F. Supp. 3d 980 (S.D. Cal. 2020) .................................................. 16

*Ms. L. v. U.S Immigr. & Customs Enf't ("ICE,*
   310 F. Supp. 3d 1133 (S.D. Cal. 2018) ................................................ 16

*Myers v Schneiderman,*
   30 NY3d 1 (2017) ........................................................................... 15, 17

*North American Soccer League, LLC v. United States Soccer Fed'n,*
   883 F.3d 32 (2d Cir. 2018) .................................................................. 10

*NYSRPA v. Bruen,*
   597 U.S. 1 (2022) ............................................................. 1, 11, 13, 18

*Picard v. Magliano,*
   42 F.4th 89 (2d Cir. 2022) ................................................................ 7, 9

*Roman Cath. Diocese of Brooklyn v. Cuomo,*
   592 U.S. 14 (2020) .............................................................................. 11

*State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.,*
   120 F.4th 59 (2d Cir. 2024) ........................................................... 10, 11

*Statharos v. New York City Taxi & Limousine Comm'n,*
   198 F.3d 317 (2d Cir. 1999) ............................................................... 12

*Steffel v. Thompson,*
   415 U.S. 452 (1974) .............................................................................. 7

*Susan B. Anthony List v. Driehaus,*
   573 U.S. 149 (2014) ........................................................................... 6, 7

*Trump v. Deutsche Bank AG,*
   943 F.3d 627 (2d Cir. 2019) ................................................................. 6

*U.S. S.E.C. v. Citigroup Global Mkts. Inc.,*
   673 F. 3d 158 (2d Cir. 2012) ............................................................... 16

*Valenzuela Arias v. Decker*,
  2020 WL 1847986 (S.D.N.Y. Apr. 10, 2020) .......................................................................... 12

**Statutes**

18 United States Code s. 922(g)(4) ............................................................................................Passim

**Regulations**

14 NYCRR 543 ...........................................................................................................................Passim
27 C.F.R. § 478.11 ............................................................................................................................ 14

## PRELIMINARY STATEMENT

Plaintiff seeks a Temporary Restraining Order and order preliminarily enjoining the enforcement of New York State firearm regulations Mental Hygiene Law § 7.09(j) and 14 NYCRR 543, which have permanently disarmed Plaintiff based on a brief voluntary hospital admission close to a decade ago.[1]

Plaintiff has never been  formally "committed" to a mental hospital or adjudicated as insane. Yet, in the absence of a formal commitment to a mental institution, New York State's broad-sweeping Mental Health Law strips individuals of their Second Amendment rights who, like Plaintiff, were voluntarily admitted to a hospital, evaluated by a psychiatrist, and then discharged because they did not meet the heightened "dangerousness" standard to be "committed."

Plaintiff, a federal law enforcement officer with the United States Department of State, is suffering irreparable injury ***now*** and will continue to suffer such injury without the relief sought herein.

New York's firearm regulations have no historical analogue and conflict with the plain text of the Second Amendment. Plaintiff has a substantial likelihood of success on the merits of his claims because Defendant cannot meet the burden of proof required by *NYSRPA v. Bruen*, 597 U.S. 1 (2022) to justify their regulations. And, because it is always in the public's interest to prevent the violation of individual unconstitutional rights, a preliminary injunction is warranted.

## STATEMENT OF FACTS

Plaintiff received an Honorable Discharge from the Army after over 22 years of service, and is currently employed as a federal law enforcement officer with the United States Department of State [see, Verified Complaint as Ex. 1 of the Declaration of Amy L. Bellantoni ("Bellantoni

---

[1] Though the Verified Complaint seeks to permanently enjoin the enforcement of the challenged statutes, this application seeks a preliminary injunction of the statutes as to Plaintiff only.

Dec.") at ¶¶ 74-88]. Plaintiff has been regularly armed with a firearm personally and/or in his employment capacity for over 30 years, without incident [Ex. 1 at ¶ 75]. Plaintiff has over 29 years of combined federal civilian and military service including active-duty experience in Operation Iraqi Freedom (2006 - Ramadi) [Ex. 1 at ¶ 77].

Between 2019 and 2021, Plaintiff was assigned as a Special Agent, U.S. Department of State, Bureau of Diplomatic Security Marine Security Guard (MSG) Desk Officer and Senior Investigator, DS HQS, Rosslyn, VA [Ex. 1 at ¶ 94].

Since 2006, Plaintiff has been employed as a Special Agent with the Bureau of Diplomatic Security, under the U.S. Department of State [Ex. 1 at ¶¶ 79, 93]. As part of his employment with the federal government, Plaintiff has undergone and passed intensive background checks to achieve high-level security clearance, including his Top Secret Clearance [Ex. 1 at ¶ 96]. Plaintiff serves as a Liaison Agent to FBI Joint Terrorism Task Force, Buffalo, New York and serves on protective details for senior U.S. and foreign diplomats in the U.S. and abroad, including high threat environments, conducts advance security surveys and site assessments, including emergency procedures [Ex. 1 at ¶¶ 80-81]. Plaintiff is responsible for conducting complex and sensitive investigations involving terrorist activities, threats, and incidents directed against U.S. citizens, U.S. Government (USG) personnel and diplomatic facilities abroad [Ex. 1 at ¶ 82].

Plaintiff holds Active Top Secret clearance issued by the U.S. Department of State and carries a firearm in the course of his job duties [Ex. 1 at ¶ 96; Declaration of Edmund J. Susman, Jr. ("Susman Dec.") at ¶ 6].[2]

Plaintiff has never been arrested, and owns multiple handguns, rifles, and shotguns, which were purchased from a federal firearm licensee (FFL) after undergoing and passing a federal

---

[2] The Susman Declaration can be found as Exhibit 1 to the federal complaint (Ex. 1 to the Bellantoni Dec.).

background check through NICS [Ex. 1 at ¶ 95]. Plaintiff has been regularly armed with a firearm personally and/or in his employment capacity for over 30 years, without incident [Ex. 1 at ¶ 75].

Carrying a firearm is an essential function of Plaintiff's employment as a Special Agent with the Bureau of Diplomatic Security, under the U.S. Department of State, and his position as a Liaison Agent to FBI Joint Terrorism Task Force in Buffalo, New York [Susman Dec. at ¶ 6].

### 2024 NICS Denial

On November 22, 2024, Plaintiff went to an FFL[3] to purchase a firearm, where he underwent a NICS background check; NICS denied his purchase [Ex. 1 at ¶¶ 97-98]. Plaintiff appealed the NICS denial to the New York State Attorney General's Office, who informed Plaintiff that his transaction "was denied under 18 United States Code s. 922(g)(4), which prohibits a person who has been adjudicated as a mental defective or has been committed to a mental institution at 16 years of age or older from possessing a firearm" [Ex. 1 at ¶¶ 99-100].

Plaintiff has neither been adjudicated as a mental defective nor "committed to a mental institution" [Ex. 1 at ¶¶ 99-102].

### 2015 Voluntary Hospital Admission

In 2015, Plaintiff sought to discuss some personal issues with a counselor; at Plaintiff's request his wife drove him to a hospital in New York State for an evaluation [Ex. 1 at ¶ 103]. At the time, Plaintiff was experiencing suicidal ideations but had not - at that time or ever - taken any steps to harm himself [Ex. 1 at ¶¶ 104-107].

Plaintiff was observed and evaluated at the hospital's emergency room CPEP (Comprehensive Psychiatric Emergency Program) [Ex. 1 at ¶ 108]. Plaintiff voluntarily admitted himself to CPEP where his legal status remained MHL 9.39/9.40 [Ex. 1 at ¶¶ 109-110]. Plaintiff

---

[3] Federal Firearms Licensee.

was discharged within days and was never converted to a MHL 9.37 "Involuntary Admission" to a mental health facility [Ex. 1 at ¶¶ 110-114]. Plaintiff has never been adjudicated by any court or other formal body as being a "dangerous" individual or "insane"[4] [Ex. 1 at ¶ 113]. By his discharge, a psychiatrist determined that Plaintiff *was not* dangerous [Ex. 1 at ¶ 115]. Plaintiff did not meet the standard to be "committed" to a mental hospital under MHL 9.37 [Ex. 1 at ¶ 115].

Plaintiff was not provided with notice that, by voluntarily admitting himself to CPEP for an evaluation, he was forfeiting his Second Amendment rights; had he known that New York would terminate his Second Amendment rights simply because he voluntarily went to CPEP to speak with someone, he never would have gone [Ex. 1 at ¶¶ 116-117]. Plaintiff was not provided with notice, or informed by CPEP, OMH (or anyone else) that he had been reported to OMH and is now listed in the NICS database as a "prohibited person" [Ex. 1 at ¶ 118].

MHL 7.09(j) and 14 NYCRR 543 do not require OMH to provide notice to an individual, including Plaintiff, that he is now listed in the OMH database and/or reported to NICS as a "prohibited person" [Ex. 1 at ¶ 119]. Plaintiff has never been "committed" or adjudicated as "insane" as required by this Nation's history and tradition to warrant permanent disarmament [Ex. 1 at ¶¶ 124-126].

Plaintiff appealed his NICS denial and was informed by the New York Attorney General's Office that his "background check was denied under 18 United States Code s. 922(g)(4), which prohibits a person who has been adjudicated as a mental defective or has been committed to a

---

[4] *D.C. v. Heller*, 554 U.S. 570, 631 (2008) ("…petitioners have stated that 'if the handgun ban is struck down and respondent registers a handgun, he could obtain a license, assuming he is not otherwise disqualified,' by which they apparently mean if he is not a felon and is not insane").

mental institution at 16 years of age or older from possessing a firearm" [Bellantoni Dec. at Exhibit 2].

Defendant's reporting of Plaintiff to NICS, NYSP and other law enforcement agencies compromises his national security clearances and assignments, has caused the revocation of Plaintiff's Global Entry status, is causing Plaintiff to be pulled aside for "secondary inspection"[5] at ports of entry when traveling [Bellantoni Ex. 1 at ¶ 132; Susman Dec. at ¶¶ 6-7].

Plaintiff intends to continue possessing and carrying firearms for employment and self-defense, but he now faces an imminent threat of arrest by the New York State Police, the FBI, and other law enforcement agencies because Defendant is falsely reporting him as a "prohibited person" [Susman Dec. at ¶ 9].  The only barrier to Plaintiff's possession, purchase, receipt, and transfer of firearms is Defendant's enforcement of the challenged regulations [Susman Dec. at ¶ 9].

Enjoining Defendant from enforcing the challenged regulations against Plaintiff will prevent his personal identifying information from being reported to NICS, NYSP, and other law enforcement agencies as a "prohibited person," which will remove the threat of arrest against Plaintiff and lift the existing and absolute barrier to his possession, purchase, receipt, and transfer of firearms [Susman Dec. at ¶ 10].

## LEGAL ARGUMENT

In the Second Circuit, the standard for issuance of a temporary restraining order is the

---

[5] Where a U.S. Customs and Border Protection (CBP) officer at the port of entry cannot verify an individual's information, a CBP officer may direct the individual to an interview area known as "secondary inspection." Secondary inspection allows inspectors to conduct additional research to verify information without causing delays for other arriving passengers [Bellantoni Ex. 1 at n. 14].

same as the standard for a preliminary injunction. *Krick v. Town of Lyons, New York*, No. 6:24-CV-06178 EAW, 2024 WL 2240088, at *5 (W.D.N.Y. May 17, 2024) citing, *Antonyuk v. Hochul*, 635 F. Supp. 3d 111, 124 (N.D.N.Y. 2022).

To obtain a preliminary injunction, a movant must show irreparable harm and meet either of two standards: (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in the movant's favor." *Connecticut State Police Union v. Rovella*, 494 F. Supp. 3d 210, 218 (D. Conn. 2020) quoting, *Trump v. Deutsche Bank AG*, 943 F.3d 627, 635 (2d Cir. 2019), rev'd on other grounds, ⸺ U.S. ⸺, 140 S.Ct. 2019, 207 L.Ed.2d 951 (2020); *Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 184 (2d Cir. 2019).

## I. PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF

To have standing under Article III, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008).

To establish injury in fact, a plaintiff must show that he suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted). An allegation of future injury may suffice if the threatened injury is "certainly impending," or there is a "substantial risk" that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation omitted). This injury must be fairly traceable to the

challenged action of the defendant and likely to be redressed by a favorable decision. *Lujan,* 504 U.S. at 560–61.[6]

### A. Plaintiff Is Suffering an Injury-in-Fact

A plaintiff satisfies the injury-in-fact requirement where he alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony*, 573 U.S. at 158–59 quoting, *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979). The Second Circuit's "low threshold" showing of a credible threat of enforcement is a "forgiving" standard, and "courts are generally willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund." *Picard v. Magliano*, 42 F.4th 89, 98 (2d Cir. 2022). Although a credible threat is not established by 'imaginary or speculative' fears of prosecution[7] the Second Circuit has found a credible threat when the government has announced its intention to enforce the challenged regulation. See, *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016).

Plaintiff has been permanently disarmed by his inclusion in OMH's NICS reporting database. Plaintiff is absolutely foreclosed from purchasing firearms and ammunition. Plaintiff attempted to purchase a firearm from an FFL on November 22, 2024 and was denied by NICS because he is being [falsely] reported by the New York State OMH as a person prohibited from possessing firearms by reason of having been "involuntarily committed to a mental hospital." See, 18 U.S.C. § 922(g)(4).

Plaintiff is also permanently foreclosed from possessing firearms. By his inclusion in the OMH reporting database, Plaintiff is being reported to NICS, NYSP, FBI, DHS and other law

---

[6] For pre-enforcement challenges, "[a] party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct." *Davis v. FEC*, 554 U.S. 724, 734 (2008). An actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging a law. *Id.* citing, *Steffel v. Thompson*, 415 U.S. 452, 459 (1974).
[7] *Adam v. Barr*, 792 F. App'x 20, 22 (2d Cir. 2019).

enforcement agencies as a person prohibited from possessing firearms under 18 U.S.C. § 922(g)(4) [Susman Dec. at ¶ 8]. Plaintiff's possession of firearms now is a felony [Susman Dec. at ¶ 8]; see also, 18 U.S.C. 922(g)(4).

Carrying a firearm is an essential function of Plaintiff's employment as a Special Agent with the Bureau of Diplomatic Security, under the U.S. Department of State, and his position as a Liaison Agent to FBI Joint Terrorism Task Force in Buffalo, New York [Susman Dec. at ¶ 6]. Defendant's reporting of Plaintiff to NICS and other law enforcement agencies compromises his national security clearances and assignments, has directly caused the revocation of Plaintiff's Global Entry status, and is causing Plaintiff to be pulled aside for "secondary inspection" at ports of entry when traveling [Bellantoni Ex. 1 at ¶ 132; Susman Dec. at ¶¶ 6-7].

### B. Plaintiff's Injury – Permanent Disarmament - is Traceable to Defendant

Plaintiff is being reported to NICS, NYSP, and other law enforcement agencies as a "prohibited person" by Defendant's enforcement of MHL § 7.09(j) and 14 NYCRR 543. As a result of Defendant's enforcement of MHL § 7.09(j) and 14 NYCRR 543, Plaintiff is permanently disarmed – an absolute barrier to his Second Amendment rights.

If Defendant were enjoined from enforcing MHL § 7.09(j) and 14 NYCRR 543 against Plaintiff, the barriers to his exercise of his Second Amendment rights would be eliminated.

### C. Plaintiff's Intent to Violate the Statutes

In addition to the foreclosure to Plaintiff's ability to purchase firearms and ammunition – every NICS check will result in a denial[8] - Plaintiff intends to continue possessing firearms. Plaintiff recently attempted to purchase another firearm, he intends to carry a firearm in connection

---

[8] Bellantoni Dec. at Ex. 2.

with his employment a federal law enforcement officer with the U.S. Department of State, and he intends to continue possessing and carrying the firearms he already owns [Susman Dec. at ¶¶ 8-9].

Plaintiff's possession of firearms, however, will expose him to arrest and incarceration by state and federal law enforcement agencies because New York is falsely reporting him to the FBI / NICS system as a prohibited person under 18 U.S.C. 922(g)(4).

This Circuit holds that courts are generally "willing to presume that the government will enforce the law." *Antonyuk v. James*, 120 F.4th 941, 1005 (2d Cir. 2024). The "credible threat of prosecution" is a "quite forgiving" requirement that sets up only a "low threshold" for a plaintiff to surmount. *Id.* (citation omitted) "Courts have not placed the burden on the plaintiff to show an intent by the government to enforce the law against it but rather presumed such intent in the absence of a disavowal by the government." *Id.* (cleaned up) (cases cited); see also, *Picard v. Magliano*, 42 F.4th 89, 98 (2d Cir. 2022).

### D.  Plaintiff's Harm is Redressable by a Favorable Judicial Decision

The only barrier to Plaintiff's exercise of protected conduct is Defendant's enforcement of MHL § 7.09(j) and 14 NYCRR 543 to maintain Plaintiff's personal identifying information in the NICS reporting database, and reporting Plaintiff to NICS, NYSP, and other law enforcement agencies as a "prohibited person" under 18 U.S.C. 922(g)(4).

Preliminarily enjoining Defendant from enforcing MHL § 7.09(j) and 14 NYCRR 543 against Plaintiff would prevent Plaintiff's personal identifying information from being reported to NICS, NYSP, and other law enforcement agencies as a "prohibited person" - the barrier to

Plaintiff's ability to possess, purchase, transfer, and receive firearms would be removed during the pendency of this litigation.[9]

## II. PRELIMINARY INJUNCTION IS WARRANTED

A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 79–80 (2d Cir. 2024) (cleaned up) (citations omitted).

To obtain a preliminary injunction, a party must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *Ibid.* quoting *North American Soccer League, LLC v. United States Soccer Fed'n*, 883 F.3d 32, 37 (2d Cir. 2018). Because under the "serious questions" standard a party would have to demonstrate both serious questions on the merits and a balance of hardships decidedly favoring the moving party, the overall burden is no lighter than the one the party bears under the 'likelihood of success' standard." *Ibid.* quoting, *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (cleaned up).

### A. Plaintiff is Suffering Irreparable Harm

The irreparable harm requirement is "the single most important prerequisite for the issuance of a preliminary injunction." *State Farm*, 120 F.4th at 80 quoting, *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). This requirement must therefore be satisfied

---

[9] Even partial relief satisfies Plaintiff's burden. See, *Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 903 (10th Cir. 2012) ("[A] favorable decision would relieve [the plaintiffs'] problem 'to some extent,' which is all the law requires."); *Care Comm. v. Arneson*, 638 F.3d 621, 631 (8th Cir. 2011) (fact that anyone could institute complaint did not undercut redressability as to county attorneys and attorney general, since granting injunctive relief "would redress a discrete injury to plaintiffs").

before the other requirements for an injunction can be considered. *Id.* citing, *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002).

To make this showing, the moving party must demonstrate that absent a preliminary injunction it will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm. *State Farm*, 120 F.4th at 80 quoting, *Faiveley*, 559 F.3d at 118. Thus, irreparable harm exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Ibid* quoting, *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999).

Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances. *State Farm*, 120 F.4th at 80 (citation omitted). Therefore, the moving party must show that "there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *State Farm*, 120 F.4th at 80 quoting, *Kamerling*, 295 F.3d at 214 (cleaned up).

The Supreme Court has held that the loss of one's constitutional freedoms "for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (First Amendment) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)) (First Amendment).

The loss of one's Second Amendment freedom, which is not a second class right[10], also "unquestionably constitutes irreparable injury."

---

[10] *Bruen*, 597 U.S. at 70 ("The constitutional right to bear arms in public for self-defense is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.") quoting, *McDonald*, 561 U.S. at 780.

The Second Circuit considers alleged constitutional violations sufficient to satisfy the irreparable harm prong. See, *Valenzuela Arias v. Decker*, No. 20 CIV. 2802 (AT), 2020 WL 1847986, at *5 (S.D.N.Y. Apr. 10, 2020) citing, *Connecticut Dep't of Envtl. Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004); *Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) (no separate showing of irreparable harm is necessary); *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) ("[I]t is the alleged violation of a constitutional right that triggers a finding of irreparable harm.") (emphasis supplied). See also, *Duncan v. Bonta*, 265 F Supp 3d 1106, 1135 ("The right to keep and bear arms protects tangible and intangible interests which cannot be compensated by damages…The right to bear arms enables one to possess not only the means to defend oneself but also the self-confidence — and psychic comfort — that comes with knowing one could protect oneself if necessary…Loss of that peace of mind, the physical magazines, and the enjoyment of Second Amendment rights constitutes irreparable injury.") citing, *Grace v. District of Columbia*, 187 F. Supp. 3d 124, 150 (DDC 2016); see also *Ezell v City of Chicago*, 651 F3d 684, 699 (7th Cir 2011) ("Infringements of this right cannot be compensated by damages.").

Plaintiff is ***permanently disarmed now***. Plaintiff's ability to exercise the rights protected by the Second Amendment are absolutely foreclosed because of Defendant's enforcement of the challenged statutes. Plaintiff is suffering a continuing and irreparable harm.

### B.  Plaintiff Is Substantially Likely To Succeed on the Merits of His Claims

Flatly rejecting the 'interest balancing' test formerly applied by the Second Circuit to Second Amendment claims, the Supreme Court announced the test for determining the

constitutionality of government regulations affecting the Second Amendment: "We reiterate that the standard for applying the Second Amendment is as follows:

> "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.
>
> The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"

*Bruen*, 597 U.S. at 17. ("In sum, the Courts of Appeals' second step is inconsistent with *Heller*'s historical approach and its rejection of means-end scrutiny.") (citation omitted).

The Second Amendment presumptively protects Plaintiffs' conduct – the possession of firearms.

Defendant alone must prove that the challenged statutes are "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. "Only then may this Court conclude that Plaintiffs' conduct falls outside the Second Amendment's 'unqualified command.'" *Id*. Defendant cannot meet this burden.

Because "not all history is created equal," *Bruen* held that, when deciding whether the government's regulation is consistent with this Nation's historical tradition,

> "the only appropriate inquiry is what the public understanding of the right to keep and bear arms was during the ratification of the Second Amendment in 1791, and perhaps during ratification of the Fourteenth Amendment in 1868."

*Bruen*, 597 U.S. at 37.

"Post-ratification adoption or acceptance of laws that are inconsistent with the original meaning of the constitutional text obviously cannot overcome or alter that text." *Bruen*, at 2137 (emphasis supplied) citing, *Heller v. District of Columbia*, 670 F.3d 1244, 1274, n. 6 (2011) (Kavanaugh, J., dissenting); *Espinoza v. Montana Dept. of Revenue*, 591 U.S. 464, 480-483 (2020).

New York permanently disarms individuals who, like Plaintiff, were admitted for evaluation and observation and discharged because they did not meet the standard for being "committed to a mental hospital."

By their plain language, an admission under MHL 9.39 and 9.40 (CPEP admissions) an individual is only *alleged* to have a mental illness. But the challenged statutes – MHL § 7.09(j) and 14 NYCRR 543 – require OMH to report *everyone* admitted to a hospital under *any* provision of MHL Article 9 [Ex. 1 at ¶¶ 32-36].

Meaning that every person who is admitted for the purpose of being evaluated (MHL 9.39/9.40) to allow a psychiatrist to determine whether the person does, in fact, insane is permanently stripped of their constitutional right to be armed *without meeting* the standard for a MHL 9.37 admission – a "commitment."

MHL 9.39 and 9.40 are not formal adjudications that an individual is a "dangerous" person and/or "insane" – they are the state's *evaluation* statutes. Indeed, under MHL 9.39 even if a court were to determine that there was "reasonable cause" to confine an individual under MHL 9.39, "such order entered by the court ***shall not be deemed to be an adjudication that the patient is mentally ill***," but only a determination that there is reasonable cause to retain the patient for evaluation and observation [Ex. 1 at ¶ 67] (emphasis added); see, MHL 9.39(a)(2). MHL 9.39 and 9.4 are not an adjudication of mental illness.

Under federal law, "Committed to a mental institution" means "[a] formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority…"  but the term "does not include a person in a mental institution for observation or a voluntary admission to a mental institution." See, 27 C.F.R. § 478.11.

14

And when a person is discharged from a MHL 9.39/9.40 admission, such discharge takes place because a psychiatrist determined that s/he ***does not pose*** a danger to himself or others. So, disarming a person based on an admission under a MHL 9.39/9.40 rather than after a determination under MHL 9.37 that a person *has* a mental illness, is premature and lacks any national historical tradition in America.

MHL § 7.09(j) and 14 NYCRR 543 wrongfully disarm people who have never been adjudicated as "insane" or "dangerous" and, as such, are overbroad, facially unconstitutional as applied to 9.39/9.40 admissions, and unconstitutional as applied to Plaintiff.

Moreover, under New York law, a suicidal ideation or attempt is not mental illness *per se*.

New York law has recognized a critical distinction between those who end their life in a rational state of mind and those who do so as a result of a mental illness – "[s]uicide involves the deliberate termination of one's existence, while in the possession and enjoyment of his mental faculties. Self-slaughter by an insane man or a lunatic is not an act of suicide within the meaning of the law." *Hines v. Doe*, No. 951-23, 2023 WL 2320234, at *3 (N.Y. Sup. Ct. Mar. 1, 2023) (concluding that "a suicidal ideation or attempt is not mental illness per se") quoting, *Breasted v Farmers' Loan & Trust Co.*, 4 Hill 73, 75 (Sup Ct 1843); and citing, *Myers v Schneiderman*, 30 NY3d 1, 12 (2017) (implying that suicide, by definition, must bear the indicia of rationality: suicide has long been understood as "the act or an instance of taking one's own life voluntarily and intentionally) (emphasis supplied); The Earliest Acts and Laws of the Colony of Rhode Island and Providence Plantations 1647-1719, p 19 (J Cushing ed 1977) (noting that as early as 1647 Rhode Island made a distinction between rational suicide and suicide with mental illness: "[if a man] kills himself of a premeditated hatred against his own life: . . . his goods and chattels are the king's custom; but in case he be an infant, a lunatic, or mad, he forfeits nothing") (emphasis supplied).

And because the State cannot identify an historical analogue for its regulations, Plaintiff's likelihood of success on the merits of his claims is substantial.

### C.  Preliminary Injunction is in the Public Interest

*Bruen, Heller* and *McDonald*, flatly rejected 'balancing' the government's interests against the individual rights guaranteed by the Second Amendment. The right to defensively carry a handgun is the "very product of an interest balancing by the people" and "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense." *Heller*, 554 U.S. at 635. That said, the equities decidedly tip in Plaintiff's favor.

A preliminary injunction is "in the public interest" if the preliminary injunction would not "cause harm to the public interest." *U.S. S.E.C. v. Citigroup Global Mkts. Inc.*, 673 F. 3d 158, 163 n.1 (2d Cir. 2012). "As with irreparable injury, when a plaintiff establishes 'a likelihood that Defendants' policy violates the U.S. Constitution, Plaintiffs have also established that both the public interest and the balance of the equities favor a preliminary injunction.'" *J.S.R. by & through J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 743 (D. Conn. 2018) citing, *Ms. L. v. U.S Immigr. & Customs Enf't ("ICE")*, 310 F. Supp. 3d 1133, 1146 (S.D. Cal. 2018), modified, 330 F.R.D. 284 (S.D. Cal. 2019), and enforcement granted in part, denied in part sub nom. *Ms. L. v. U.S. Immigr. & Customs Enf't*, 415 F. Supp. 3d 980 (S.D. Cal. 2020) quoting, *Arizona Dream Act Coalition*, 757 F.3d 1053, 1069 (9th Cir. 2014) (balance of equities favors preventing the violation of a party's constitutional rights).

The public are "the People" for whom the Second Amendment was codified. Disarming members of the public who have merely been accused of having a mental illness, but then discharged because they did not meet the standard for a formal commitment to a mental hospital

under MHL 9.37 does not benefit the public. A dangerous person would be retained under MHL 9.37; there is no basis to disarm a non-dangerous individual.

Moreover, an armed person who voluntarily seeks assistance, rather than acting in a dangerous manner, has demonstrated that they are *de facto* not "insane." Disarming such an individual after a psychiatrist has confirmed that they are not a danger to themselves or others lacks an historical analogue.[11]

New York law has recognized a critical distinction between those who end their life in a rational state of mind and those who do so as a result of a mental illness – "[s]uicide involves the deliberate termination of one's existence, while in the possession and enjoyment of his mental faculties. Self-slaughter by an insane man or a lunatic is not an act of suicide within the meaning of the law." *Hines v. Doe*, No. 951-23, 2023 WL 2320234, at *3 (N.Y. Sup. Ct. Mar. 1, 2023) (concluding that "a suicidal ideation or attempt is not mental illness per se") quoting, *Breasted v. Farmers' Loan & Trust Co.*, 4 Hill 73, 75 (Sup Ct 1843); and citing, *Myers v. Schneiderman*, 30 NY3d 1, 12 (2017) (implying that suicide, by definition, must bear the indicia of rationality: suicide has long been understood as "the act or an instance of taking one's own life voluntarily and intentionally) (emphasis supplied); The Earliest Acts and Laws of the Colony of Rhode Island and Providence Plantations 1647-1719, p 19 (J Cushing ed 1977) (noting that as early as 1647 Rhode Island made a distinction between rational suicide and suicide with mental illness: "[if a man] kills himself of a premeditated hatred against his own life: . . . his goods and chattels are the king's custom; but in case he be an infant, a lunatic, or mad, he forfeits nothing") (emphasis supplied).

---

[11] The MHL 9.39/9.40 period of evaluation is a temporary disarmament based on reasonable cause, like the constitutionally allowable temporary confinement to evaluate the individual for dangerousness. If the individual does not meet the MHL 9.37 standard of dangerousness for a confined "commitment" under MHL 9.37 (and are thus discharged) they do not meet the standard for disarmament.

To find that an emergency evaluation and observation under MHL 9.39/9.40 is the equivalent of a "commitment" warranting permanent disarmament means that no non-actionable period of evaluation and observation exists in New York State – a policy choice that is repugnant to the Constitution.

"As Members of the Supreme Court have already explained, [t]he right to keep and bear arms ... is not the only constitutional right that has controversial public safety implications." *Bruen*, 597 U.S. at 17, n. 3 quoting, *McDonald*, 561 U.S. 742, 783 (2010) (plurality opinion).

Permanently disarming a person who has been deemed by a psychiatrist not to pose a danger is not a constitutionally-permissible policy choice. See *e.g.*, *Heller*, 554 U.S. *at* 636 *("But the enshrinement of constitutional rights necessarily takes certain policy choices off the table.")*. There is strong public interest in encouraging people to seek help and assistance when needed. Permanently, needlessly (and surreptitiously*)* disarming those who are determined to be medically sane and non-dangerous undermines the public interest.

"The public interest favors the exercise of Second Amendment rights by law-abiding responsible citizens. And it is always in the public interest to prevent the violation of a person's constitutional rights. *Duncan*, at 1136 (S.D. Cal. 2017), aff'd, 742 F. App'x 218 (9th Cir. 2018) (granting preliminary injunction of California's magazine ban statute) citing, *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), aff'd sub nom., *Burwell v. Hobby Lobby Stores, Inc.*, ⸺ U.S. ⸺, 134 S.Ct. 2751, 189 L.Ed.2d 675 (2014).

Granting the requested relief will place no burden on the government. The harms to Plaintiff – the termination of an enumerated constitutional right – are actual, irreparable and will continue without the relief sought herein.

**CONCLUSION**

Plaintiff's motion for a preliminary injunction should be granted.

Dated: January 2, 2025
      Scarsdale, New York

                  THE BELLANTONI LAW FIRM, PLLC
                  *Attorneys for Plaintiff*

By:     *Amy L. Bellantoni*
                  Amy L. Bellantoni
                  2 Overhill Road, Suite 400
                  Scarsdale, New York 10583
                  abell@bellantoni-law.com