UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
EDMUND J. SUSMAN, JR., and all similarly
situated individuals,

                          Plaintiff,            1:24-cv-01281-LJV-LGF

        -against-


ANN MARIE T. SULLIVAN, M.D., in her
official capacity, ROSSANA ROSADO, in her official
capacity, PAM BONDI, in her official capacity,
KASH PATEL, in his official capacity,

                          Defendants.
-------------------------------------------------------------------x




# PLAINTIFF'S REPLY MEMORANDUM OF LAW TO THE FEDERAL DEFENDANTS IN FURTHER SUPPORT OF HIS SECOND MOTION FOR A PRELIMINARY INJUNCTION






**THE BELLANTONI LAW FIRM, PLLC**
***Attorneys for Plaintiff***
**2 Overhill Road, Suite 400**
**Scarsdale, New York 10583**

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ...............................................................................................i

I. PLAINTIFF IS SUFFERING AN INJURY-IN-FACT: AN ABSOLUTE BARRIER TO SECOND AMENDMENT-PROTECTED CONDUCT..............................................................1

    A. Plaintiff is Banned from Acquiring Firearms and Ammunition ...................................1

    B. Plaintiff is on Administrative Leave With "No Job Duties" - § 925A is Immaterial ....2

    C. Still, a § 925A Exemption Does Not Cure the Second Amendment Violation ............2

II. THE LOSS OF SECOND AMENDMENT RIGHTS IS IRREPARABLE HARM.................2

III. PLAINTIFF IS NOT REQUIRED TO SEEK A CERTIFICATE OF RELIEF .....................4

    A. Plaintiff Has Suffered No Disqualifying Event ..........................................................4

    B. Section 1983 Plaintiffs Are Not Required to Exhaust Administrative Remedies.........4

IV. THE FEDERAL DEFENDANTS ARE PROPERLY BEFORE THIS COURT .....................6

V. PLAINTIFF HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS .....7

    A. *Rahimi* Requires A Judicial Determination of Dangerousness.....................................7

    B. No Second Circuit Precedent Exists. The pre-Bruen Summary Order in *Phelps* Did Not Involve a Constitutional Question or Any Second Amendment Analysis..................8

    C. No Tradition Supporting the Application of § 922(g)(4) to § 9.39 Admissions...........9

    D. Congress, 27 C.F.R. 478, the ATF, and Circuit Courts Support Plaintiff .................10

CONCLUSION...............................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrews v. State,*
   50 Tenn. 165 (1871) .................................................................... 1

*Antonyuk v. Bruen,*
   624 F. Supp. 3d 210 (N.D.N.Y. 2022)......................................... 3

*Antonyuk v. James,*
   120 F.4th 941 (2d Cir. 2024) ....................................................... 3

*Cooper v. Lee,*
   86 F. Supp. 3d 480 (E.D. Va. 2015)............................................ 5

*D.C. v. Heller,*
   554 U.S. (2008) ............................................................................ 2

*Dugan v. Rank,*
   372 U.S. 609 (1963) .................................................................... 6

*Escamilla v. United States,*
   62 F.4th 367 (7th Cir. 2023)........................................................ 9

*Ezell v. City of Chicago,*
   651 F.3d 684 (7th Cir. 2011) ....................................................... 3

*Faiveley Transp. Malmo AB v. Wabtec Corp.,*
   559 F.3d 110 (2d Cir. 2009) ........................................................ 2

*Franklin v. Sessions,*
   291 F. Supp. 3d 705 (W.D. Pa. 2017) ....................................... 11

*G. R. Dickerson, Dir., Bureau of Alcohol, Tobacco & Firearms,*
   1983-1 A.T.F.Q.B. 48 (Mar. 1983) .......................................... 10

*Gazzola v. Hochul,*
   88 F.4th 186 (2d Cir. 2023) ......................................................... 9

*Gonzales v. Carhart,*
   550 U.S. 124 (2007) .................................................................... 6

*Gonzales v. Raich,*
   545 U.S. 1 (2005) ........................................................................ 6

*Hardaway v. Nigrelli,*
  636 F. Supp. 3d 329 (W.D.N.Y. 2022) .................................................................. 3

*Heck v. Humphrey,*
  512 U.S. 477 (1994) ............................................................................................. 4

*Larson v. Domestic & Foreign Com. Corp.,*
  337 U.S. 682 (1949) ............................................................................................. 6

*McNeese v. Board of Ed. for Community Unit School Dist. 187,*
  373 U.S. 668 (1963) ............................................................................................. 5

*Monroe v. Pape,*
  365 U.S. 167 (1961) ............................................................................................. 4

*Patsy v. Board of Regents of the State of Fla.,*
  457 U.S. 496 (1982) ............................................................................................. 4

*Phelps v. Bosco,*
  711 F. App'x 63 (2d Cir. 2018) ........................................................................... 9

*Rodriguez v. DeBuono,*
  175 F.3d 227 (2d Cir.1999) ................................................................................. 2

*Scarborough v. United States,*
  431 U.S. 563 (1977) ........................................................................................... 10

*New York State Rifle & Pistol Ass'n v. Bruen,*
  587 U.S.1 (2022) ..................................................................................... 7, 8, 9, 12

*Sedita v. United States,*
  763 F. Supp. 3d 63 (D.D.C. 2025) .................................................................... 1, 6

*Susman v. Sullivan,*
  2025 WL 575515 (W.D.N.Y. Feb. 21, 2025) ..................................................... 1

*Teixeira v. Cnty. of Alameda,*
  873 F.3d 670 (9th Cir. 2017) ............................................................................... 1

*Tyler v. Hillsdale Cnty. Sheriff's Dep't,*
  837 F.3d 678 ...................................................................................................... 11

*U.S. ex rel. The Saint Regis Mohawk Tribe v. President R.C.--St. Regis Mgmt. Co.,*
  451 F.3d 44 (2d Cir. 2006) .................................................................................. 5

*U.S. v. Decastro,*
    682 F.3d 160 (2d Cir. 2012) ................................................................. 6

*United States v. Bartley,*
    9 F.4th 1128 (9th Cir. 2021) ............................................................... 12

*United States v. Bass,*
    404 U.S. 336 (1971) ........................................................................... 10

*United States v. Giardina,*
    861 F.2d 1334 (5th Cir. 1988) ............................................................ 11

*United States v. Hansel,*
    474 F.2d 1120 (8th Cir. 1973) ............................................................ 11

*United States v. McIlwain,*
    772 F.3d 688 (11th Cir. 2014) ............................................................ 11

*United States v. Midgett,*
    198 F.3d 143 (4th Cir. 1999) .............................................................. 12

*United States v. Rahimi,*
    602 U.S. 680 (2024) ........................................................................ 7, 8

*United States v. Rehlander,*
    666 F.3d 45 (1st Cir. 2012) ........................................................... 11, 12

*United States v. Tucker,*
    47 F.4th 258 (5th Cir. 2022) .............................................................. 11

*Verizon Maryland Inc. v. Public Service Commission of Maryland,*
    535 U.S. 635 (2002) ............................................................................. 6

*Wilbur v. Harris,*
    53 F.3d 542 (2d Cir. 1995) ................................................................... 4

*Zinermon v. Burch,*
    494 U.S. 113 (1990) ............................................................................. 4

**Statutes**

18 U.S.C. § 922(g)(4) .............................................................. Passim
34 U.S.C. § 40915(b) ....................................................................... 5
§ 922 ................................................................................... 10, 11
§ 922(g) .................................................................................. 11

**Regulations**

14 N.Y.C.R.R. § 543 ................................................................................................ 6
27 C.F.R. 478 ...................................................................................................... 10
27 C.F.R. 478.11 ................................................................................................. 11

**Other Authorities**

*Open Letter to the States' Atty's Gen.*,
    2007 WL 9606857 (ATF May 9, 2007) ................................................................. 12

*Securing Fragile Foundations: Affirmative Constitutional Adjudication in Federal Courts*,
    84 N.Y.U.L. Rev. 681 (2009) ............................................................................ 6

I.  **PLAINTIFF IS SUFFERING AN INJURY-IN-FACT: AN ABSOLUTE BARRIER TO SECOND AMENDMENT-PROTECTED CONDUCT**[1]

### A. Plaintiff is Banned from Acquiring Firearms and Ammunition

The Government ignores the very event that placed Plaintiff on notice that he is classified as a "prohibited person" by the FBI, DOJ and New York State – the NICS denial of his handgun purchase, which implicates conduct protected by the plain text of the Second Amendment. *See, Sedita v. United States*, 763 F. Supp. 3d 63, 76 (D.D.C. 2025) ("As a necessary ancillary to the right of possession, the right of acquisition is protected, too. If it were not, the letter of the Second Amendment would be stripped of all substance.") citing, *Andrews v. State,* 50 Tenn. 165, 178 (1871) ("The right to keep arms, necessarily involves the right to purchase them."); *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) ("[T]he core Second Amendment right to keep and bear arms for self-defense wouldn't mean much without the ability to acquire arms.") (cleaned up). "One can only keep if one first obtains, and thus the obtainment is protected just as much as the keeping." *Sedita*, 763 F. Supp. 3d at 76.

Plaintiff is barred from acquiring firearms and ammunition; every NICS background check for the purchase of firearms and/or ammunition will result in a "Deny" because Plaintiff was reported to the federal government and continues to be identified as a "prohibited person" under 18 U.S.C. § 922(g)(4) [Stipulated Facts ("SF") ¶¶ 8-16; 104-110].

---

[1] At the outset, one clarification is warranted: the Declaration submitted by Plaintiff in support of his first motion for a preliminary injunction on February 4, 2025, through referred to as "unsigned" in this Court's decision *Susman v. Sullivan*, No. 24-CV-1281-LJV, 2025 WL 575515, at *3 (W.D.N.Y. Feb. 21, 2025), and thereafter by the defendants [Gov. Br. at 6] was, in fact, duly executed by Mr. Susman [see, DE 21-3 at 4 of 4].Because the signature page of the .pdf document, when printed, did not align with the pages of the Word version of the document as created, the entirety of the Word version and the .pdf signature page of the Declaration were filed on the docket.

**B. Plaintiff is on Administrative Leave With "No Job Duties" - § 925A is Immaterial**

The Government spills much ink on § 925A[2] to argue the exemption allows Plaintiff to be armed during his 'official duties' knowing full-well its hollow ring – Plaintiff is "on administrative leave, with no job duties" [SF at ¶ 53-54].[3] No minute of his life is "exempted" from § 922(g)(4).

**C. Still, a § 925A Exemption Does Not Cure the Second Amendment Violation**

Even when Plaintiff was performing his job duties, as the Government observes, "Plaintiff could not use his firearm for any reason he wanted to" including if he wanted to go "skeet shooting or fox hunting, such use would not be part of his 'official duties' and [he] would remain prohibited under § 922(g)(4)" [Gov. Br. at 9]. So, too, is shopping at the mall, pumping gas – and simply being at home in his living room. As the Government concedes, if Plaintiff is armed while he engages in ***any*** non-official activities, he is committing a crime [Gov. Br. at 9].

The Supreme Court declared that being armed in case of confrontation is a "guarantee[d] individual right." *D.C. v. Heller*, 554 U.S. at 570, 592 (2008). So, to whatever degree, Plaintiff's Second Amendment rights have been, and will continue to be, violated without an injunction.

## II. THE LOSS OF SECOND AMENDMENT RIGHTS IS IRREPARABLE HARM

Irreparable harm  - the "the single most important prerequisite for the issuance of a preliminary injunction" [*Faiveley Transp. Malmo AB v. Wabtec Corp.,* 559 F.3d 110, 118 (2d Cir. 2009) quoting, *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir.1999)] is demonstrated by a plaintiff's injury-in-fact.

---

[2] Gov. Br. at 5-9.

[3] Under the Government's specious position, Plaintiff is expected to continue investigating and arresting violent criminals by day, knowing that once the work day was completed he would be disarmed like a sitting duck for retribution. Such ivory tower scenarios are grossly inconsistent with the realities of violence and criminal behavior. Indeed, Plaintiff was physically attacked by the relatives of the criminal defendants in the matter of *United States v. Abughanem*, 1:23-cr-00046-JLS an international kidnapping case involving the three (3) defendant Yemen nationals. of Plaintiff provided the Affidavit in Support of the Criminal Complaint in *Abughanem*. *See*, 1:23-cr-00046-JLS at DE 1; *see,* Reply Declaration of Edmund J. Susman, Jr. at Ex. 1.

Violations of the Second Amendment constitute irreparable harm. *See*, *Hardaway v. Nigrelli,* 636 F. Supp. 3d 329, 349 (W.D.N.Y. 2022) (finding "no question that the challenged (sensitive locations) restrictions (of the CCIA), if enforced, will cause irreparable harm"); *see also*, *Antonyuk v. Bruen*, 624 F. Supp. 3d 210, 259–60 (N.D.N.Y. 2022) (presumption of irreparable harm arising from the Second Amendment violations, including "diminished safety in all the locations that he currently carries his concealed handgun that he will not be able to carry it" "if an injunction is not issued."). Indeed, the "Second Amendment protects ... intangible and unquantifiable interests," the infringement of which "cannot be compensated by damages." *Ezell v. City of Chicago*, 651 F.3d 684, 698 (7th Cir. 2011).

The following facts are undisputed: (i) Plaintiff is barred from possessing and purchasing firearms and ammunition by § 922(g)(4) based on Plaintiff's 2015 admission to a hospital under MHL § 9.39 [SF 56 at ¶¶ 95-98]; (ii) Plaintiff is on administrative leave from his employment as a federal law enforcement officer and has no "official job duties" [SF ¶ 54] – thus, the § 925A exemption gushed over by the Government is moot.

Acquiring arms and ammunition is conduct protected by the plain text of the Second Amendment, and there is no sliding scale of constitutional violations that, somehow, renders the barrier to Plaintiff's protected activity 'non-injurious.' This Court already found that Plaintiff "undoubtedly has suffered an "injury in fact." *Susman,* at *8. *See also, Antonyuk v. James*, 120 F.4th 941, 977 (2d Cir. 2024), cert. denied, No. 24-795, 2025 WL 1020368 (U.S. Apr. 7, 2025) (a plaintiff suffers an injury-in-fact if the defendant's allegedly unlawful conduct impairs that interest). Absent a preliminary injunction Plaintiff will continue to suffer an actual and imminent injury. Plaintiff has satisfied the "most important factor," tipping the balance in his favor.

### III.  PLAINTIFF IS NOT REQUIRED TO SEEK A CERTIFICATE OF RELIEF

#### A.  Plaintiff Has Suffered No Disqualifying Event

Plaintiff has no obligation to seek a restoration of his rights because he has not suffered a disqualifying event. There is no historical tradition of permanently disarming a person who is only *alleged* to have a mental illness, has only been admitted to a hospital for a brief and temporary period of time and then discharged, and has not been formally adjudicated as insane or dangerous – nor does the Government identify one.

#### B. Section 1983 Plaintiffs Are Not Required to Exhaust Administrative Remedies

It is well-established in the Second Circuit and the U.S. Supreme Court that a § 1983 plaintiff has no obligation to exhaust administrative remedies before seeking redress for violations of the U.S. Constitution.

While conceding that the COR process is simply an "option" [Gov. Br. at 10] the Government presses this Court to heave a requirement upon Plaintiff's shoulders that has consistently been rejected by the Supreme Court and the Second Circuit. "As the Supreme Court has clearly held, the exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." *Wilbur v. Harris*, 53 F.3d 542, 544 (2d Cir. 1995) quoting *Patsy v. Board of Regents of the State of Fla.*, 457 U.S. 496, 516 (1982); (citing cases); *Heck v. Humphrey*, 512 U.S. 477, 483 (1994) ("§ 1983 contains no exhaustion requirement beyond what Congress has provided"); *Monroe v. Pape*, 365 U.S. 167, 183 (1961) (§ 1983 plaintiff need not exhaust state court remedies; the "federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked.").[4] The

---

[4] Only Fourteenth Amendment procedural due process claims require a plaintiff to exhaust administrative remedies. See, e.g., *Wilbur*, 53 F.3d at 544 (Fourteenth Amendment's procedural due process guarantee require analysis of state remedies) citing, *Zinermon v. Burch*, 494 U.S. 113, 125–26 (1990) [*see,* Gov. Br. at 25].

"general rule" is that plaintiffs may bring constitutional claims under §1983 "without first bringing any sort of state lawsuit, even when state court actions addressing the underlying behavior are available." D. Dana & T. Merrill, Property: Takings 262 (2002); see *McNeese v. Board of Ed. for Community Unit School Dist. 187*, 373 U.S. 668, 672 (1963) (it would defeat the purpose of §1983 "if…assertion of a federal claim in a federal court must await an attempt to vindicate the same claim in a state court").

The Government's suggestions for a 'stay,' unsupported by legal authority, are no basis to deny Plaintiff's motion or to delay adjudication of the merits of his claims [Gov. Br. at 10-11]. Nor is its reliance on *U.S. ex rel. The Saint Regis Mohawk Tribe v. President R.C.--St. Regis Mgmt. Co.*, 451 F.3d 44, 50 (2d Cir. 2006) sound [Gov. Br. at 12]. The text of the Indian Gaming Regulatory Act (IGRA) specifically requires administrative steps be taken before a plaintiff may bring an action under the IGRA ("Section 2714 of IGRA reads, "Decisions made by the Commission pursuant to section[ ] ... 2711 ... of this title shall be final agency decisions for purposes of appeal to the appropriate Federal district court pursuant to [the Administrative Procedure Act]"). *Mohawk,* 451 F.3d at 50.

In stark contrast, 34 U.S.C. § 40915(b), which defines the state court standard for reviewing the denial of a COR application, contains no limiting language. 34 U.S.C. § 40915(b) applies only to people who have applied for a COR and were denied; it does not prohibit Plaintiff from challenging the constitutionality of *different* state and federal statutes. Similarly inapposite is the administrative exhaustion doctrine in *inter partes* review proceedings of the Patent and Trademark Office [Gov. Br. at 13 citing *Cooper v. Lee*, 86 F. Supp. 3d 480, 484–85 (E.D. Va. 2015), aff'd (Jan. 14, 2016)]. Plaintiff is not "challenging an agency determination;" he is challenging the

constitutionality of state and federal statutes under the Second Amendment. The Government's legal analogies miss the mark.

Casting aside subjective opinions, the perceived 'inconvenience' of adjudicating this case[5] [Gov. Br. at 14], and litigation "off-ramps" [*Id.* at 15], the Government identifies no legal authority supporting its claim that Plaintiff must apply for a Certificate of Relief to establish Article III standing – and Plaintiff should not be subjected to retribution for seeking redress in this Court for the violations of his Second Amendment rights, which is protected by the First Amendment.[6]

## IV. THE FEDERAL DEFENDANTS ARE PROPERLY BEFORE THIS COURT

While the United States would not be a proper defendant under § 1983, "the Attorney General and Director [are proper defendants in a suit seeking] injunctive and declaratory relief under the Second Amendment. Well-established principles of equity confirm [the plaintiff's] ability to bring a suit against federal officers in their official capacities directly under the Constitution when the officers are allegedly acting unconstitutionally or pursuant to an unconstitutional grant of power." *Sedita v. United States*, 763 F. Supp. 3d 63, 71, 73 (D.D.C. 2025) quoting, *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 690–91 (1949); *Dugan v. Rank*, 372 U.S. 609, 621–22 (1963). "And when a plaintiff is proceeding in equity as such, sovereign immunity is no impediment to specific relief." *Sedita*, 763 F. Supp. 3d at 73 citing, *Larson*, 337 U.S. at 691; *Dugan*, 372 U.S. at 620–22.[7] So long as Article III's prerequisites are met, and so

---

[5] This case also does not involve conflicting statutory interpretations [Gov. Br. at 14]. It involves holding the state and federal defendants to their burden of proving up an historical analogue for the application of § 922(g)(4) and MHL § 7.09(j) to § 9.39 admissions - not general and anecdotal discussion of 'disarming the mentally ill.'

[6] Similarly, *U.S. v. Decastro*, 682 F.3d 160 (2d Cir. 2012) is inapposite. *Decastro* involved a challenge to the state licensing regulations to which the plaintiff did not submit. Here, Plaintiff is not challenging the Certificate of Relief regulations (14 N.Y.C.R.R. § 543, *et seq.*) [*see,* First Amended Complaint at DE 30].

[7] The Supreme Court and the lower federal courts provide quite regularly for the enforcement of provisions of the Constitution without express congressional authorization. The Supreme Court continues to recognize three categories of direct constitutional claims: Supremacy Clause Preemption, Dormant Commerce Clause, and suits for prospective relief against federal officers, typically seeking to enjoin federal laws as violative of some structural provision or

long as there is jurisdiction, federal courts assume that they need no special authorization from Congress to entertain plaintiffs' constitutional claims and to provide appropriate remedies. *Berzon,* at 712. The federal defendants are proper defendants in this action, which seeks equitable relief.

## V. PLAINTIFF HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiff's only burden in the likelihood of success prong in this Second Amendment challenge is to demonstrate that the conduct being regulated falls within the plain text of the Second Amendment. *NYSRPA v. Bruen*, 587 U.S. 1, 17 (2022) ("when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct"). Plaintiff has met his burden [*see*, Point II]. The burden now lies with the Government to identify an historical analogue for its regulation, which it has failed to deliver.

### A. *Rahimi* Requires A Judicial Determination of Dangerousness

The Government failed to demonstrate that the application of § 922(g)(4) to MHL § 9.39 admissions - brief and temporary hospital admissions based on an allegation of mental illness and dangerousness – "fits within our Nation's historical tradition of firearm regulation." *United States v. Rahimi*, 602 U.S. 680 (2024). Rather, using broad brush strokes, the Government generally recounts the history of disarming the "mentally ill." But Plaintiff is not, and never has been adjudicated as "mentally ill" [SF ¶ 111].

In *Rahimi*, the Supreme Court upheld the constitutionality of § 922(g)(8) – the federal prohibition on possessing firearms while being subject to an existing order of protection – based

---

principle of the Constitution. The Honorable Marsha S. Berzon, *Securing Fragile Foundations: Affirmative Constitutional Adjudication in Federal Courts*, 84 N.Y.U.L. Rev. 681, 709-712 (2009) (discussing, *Gonzales v. Carhart*, 550 U.S. 124, 168 (2007) (partial birth abortion), *Gonzales v. Raich*, 545 U.S. 1, 7–9 (2005) (rejecting the claim that a ban on home-grown marijuana is violative of the Commerce Clause), and *Verizon Maryland Inc. v. Public Service Commission of Maryland*, 535 U.S. 635 (2002) which were not dismissed on the grounds that the federal officers were not proper parties in a § 1983 action).

on its relevantly similarity to this Nation's surety and 'going armed' laws, which were applied to "individuals found to threaten the physical safety of another." *Rahimi*, 602 U.S. at 698.

The Supreme Court, however, specifically noted that § 922(g)(8), like the surety and going armed laws, "applies only ***once a court has found*** that the defendant represents a credible threat to the physical safety of 1902 another. *Rahimi*, 602 U.S. at 698–99 (emphasis added). "[922(g)(8)] matches the surety and going armed laws, which involved ***judicial determinations*** of whether a particular defendant likely would threaten or had threatened another with a weapon." *Rahimi*, 602 U.S. at 699 (emphasis added).

The Government's general reference to "mentally ill" laws are inapposite because § 9.39 is neither a "finding" nor an "adjudication of mental illness." And while § 9.39 does offer notice of the right to a court hearing for people seeking to be released, the plain text of the statute declares that any court order continuing the confinement "***shall not be deemed to be an adjudication that the patient is mentally ill***."[8] Even if Plaintiff had requested a discharge hearing at some point during the 4 days he was in the hospital, which he did not because he voluntarily admitted himself to the hospital [DE 30 at ¶ 121], a court order continuing his confinement would still not have constituted a "formal finding" that he was either "mentally ill" or "dangerous."

### B. No Second Circuit Precedent Exists. The pre-*Bruen* Summary Order in *Phelps* Did <u>Not</u> Involve a Constitutional Question or Any Second Amendment Analysis

There is no Second Circuit precedent finding that (i) disarmament based on a § 9.39 admission or (ii) applying § 922(g)(4) to § 9.39 admissions pass constitutional muster under the *Bruen* test. Stated differently, the Second Circuit has not analyzed the constitutionality of either §

---

[8] "If it be determined that there is such reasonable cause, the court shall forthwith issue an order authorizing the retention of such patient for any such purpose or purposes in the hospital for a period not to exceed fifteen days from the date of admission. Any such order entered by the court shall not be deemed to be an adjudication that the patient is mentally ill, but only a determination that there is reasonable cause to retain the patient for the purposes of this section."

7.09(j) or § 922(g)(4)'s application to § 9.39 admissions under the text, history, and tradition test announced in *Bruen*. And continuing to reference the non-precedential Summary Order in *Phelps v. Bosco*, 711 F. App'x 63 (2d Cir. 2018) cannot 'create' such a precedent from whole cloth. As the Second Circuit itself noted, "Phelps did not raise a constitutional challenge to the state's conduct on appeal." *Phelps*, 711 F. App'x at 65 (citation omitted) (emphasis added).[9], [10]

### C. No Tradition Supporting the Application of § 922(g)(4) to § 9.39 Admissions

The Government offers general declarations concerning the disarmament of "dangerous" people, including those who would not swear an oath of allegiance (before a magistrate), and disarming "tramps" and children [Gov. Br. at 19], then proceeds to identify regulations authorizing justices of the peace and magistrates to "commit" "lunatics" and those of "unsound mind" [Gov. Br. at 20] (emphasis added). These examples are a far cry from an unfounded allegation of mental illness and dangerousness, underscoring the fact that, historically, (i) *ex parte* means were not employed to disarm people, or to "commit" them to a mental institution and (ii) that the category of people who were "committed" were, quite literally, "out of their mind" such that a brief hospital stint would not 'cure' this type of mental deficiency.

Historically, disarmament was effected by the confinement itself; a hospitalized individual is not in possession of arms, however brief the admission. Even assuming that Plaintiff's admission was "involuntary" [Gov. Br. at 23] this brief period of disarmament during a 4-day admission to ECMC is a permissible period of temporary confinement and disarmament to determine whether an individual "is in need of involuntary care and treatment" [SF at Ex. A p. 6 ("Emergency

---

[9] Reliance on *Escamilla v. United States*, 62 F.4th 367, 374 (7th Cir. 2023) is, likewise, in vain. The Seventh Circuit's analysis relied on *Phelps* and other state cases as if a Second Amendment question had been raised. Likewise, *Gazzola v. Hochul*, 88 F.4th 186, 200 (2d Cir. 2023), cert. denied, 144 S. Ct. 2659 (2024) conducted no analysis relevant to this case.

[10] Likewise, this Court cannot simply rely on *Phelps*, but is called to pick up where *Phelps* left off by determining whether the Government has proven that the application of § 922(g)(4) to § 9.39 admissions is consistent with this Nation's historical traditions of firearm regulation.

Admission Section 9.39" form[11]) at which time his admission would be converted to an "involuntary admission" under § 9.27 or § 9.37.

But Plaintiff's discharge without such conversion, as mandated by § 9.39(b) "if a determination is made that the person is not in need of involuntary care and treatment," demonstrates as a matter of law that Plaintiff was found ***not*** to have a mental illness likely to result in serious harm to himself or others. *See,* § 9.39. It is repugnant to the Second Amendment to continue the brief and temporary disarmament that takes place while confined under § 9.39 outside of the hospital doors at discharge. And the existence of a post-disarmament Certificate of Relief process does not erase the fact that, people discharged from a § 9.39 admission, as a matter of law, have lost the individual right to possess firearms and ammunition [Gov. Br. at 24].

### D. Congress, 27 C.F.R. 478, the ATF, and Circuit Courts Support Plaintiff[12]

18 U.S.C. 922(g)(4) does not contemplate permanently disarming individuals for having brief contact with a hospital's mental health services. The Omnibus Crime Control Act, the precursor to § 922, imposed criminal penalties on any person who*, inter alia,* possesses firearms who…"(3) has been ***adjudged by a court*** of the United States or of a State or any political subdivision thereof of being ***mentally incompetent***…" *Scarborough v. United States*, 431 U.S. 563, 564 n. 1 (1977) (emphasis added). When Congress enacted § 922(g)(4), the restoration of firearm rights was unforeseen. "Congress made no exception for subsequent curative events…Congress obviously felt that such a person, though unfortunate, was too much of a risk to be allowed firearms privileges…" Supreme Ct. Decision *G. R. Dickerson, Dir., Bureau of Alcohol, Tobacco & Firearms*, 1983-1 A.T.F.Q.B. 48 (Mar. 1983). Citing, *United States v. Bass*, 404 U.S.

---

[11] Which provides, "Within 15 days of admission, if it is determined that the person is not in need of involuntary care and treatment, s/he shall be discharged unless s/he is suitable and agrees to remain as a voluntary patient…"

[12] The Government's reference to unchallenged, modern-day regulations is immaterial to the analysis of whether a national *historical* tradition exists [Gov. Br. at 21].

336, 344-345 (1971). Congress intended to disqualify and disarm those with psychiatric conditions with a level of expected permanency – not temporary, brief or acute mental health symptoms. And this challenge is to the application of § 922(g)(4) to § 9.39, not generally [Gov. Br. at 21].

The scope of § 922(g)(4) does not encompass hospital admissions like those under MHL § 9.39, as borne out through Congressional history, ATF interpretations, several other Circuit Courts of Appeal, and 27 C.F.R. 478.11 exempting "a person in a mental institution for observation or a voluntary admission to a mental institution." [*see,* Memo of Law in Support [DE 36-4 at 9-11].

18 U.S.C. § 922(g)(4) cannot be read to encompass temporary involuntary emergency hospitalization attended only by *ex parte* procedures. *United States v. Rehlander*, 666 F.3d 45 (1st Cir. 2012) ("This would be a different case if section 922 addressed *ex parte* hospitalizations and provided for a temporary suspension of the right to bear arms pending further proceedings."); *United States v. Tucker*, 47 F.4th 258 (5th Cir. 2022); *Franklin v. Sessions*, 291 F. Supp. 3d 705, 716 (W.D. Pa. 2017) (applying the principle of noscitur a sociis, concluding "other lawful authority" must resemble the specific, introductory categories of a "court, board, [or] commission"); *United States v. Hansel*, 474 F.2d 1120, 1124-1125 (8th Cir. 1973) (§ 922(g)(4) does not prohibit persons who have any history of mental illness from possessing guns) (accumulating various sources that pre-date the passage of the Gun Control Act in 1968); *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 837 F.3d 678, 687 ("[W]e note that § 922(g)(4) does not use the phrase 'mentally ill,' nor does it attempt to prohibit all currently mentally ill persons from firearm possession…[it] uses prior judicial adjudications…as proxies for mental illness."); *United States v. Giardina*, 861 F.2d 1334, 1337 (5th Cir. 1988) (nothing in § 922(g) indicates an intent to prohibit firearm possession by persons who had been hospitalized for observation and examination where they were found not to be mentally ill and were not committed); *United States v. Hansel*, 474 F.2d

1120, 1122–23 (8th Cir. 1973) (same); *United States v. McIlwain*, 772 F.3d 688, 698 (11th Cir. 2014) (criminal defendant was "committed" within § 922(g)(4), and not just subject to "emergency hospitalization," where he received a full judicial hearing, was represented by counsel, found to be "mentally ill and…a real and present threat of substantial harm to himself and others," and ordered confined); *United States v. Midgett*, 198 F.3d 143, 146 (4th Cir. 1999) (same); *United States v. Bartley*, 9 F.4th 1128 (9th Cir. 2021) (unlike the emergency procedure… in *Rehlander,* Bartley was examined by a psychologist, represented by counsel, and determined "not fit to proceed" by a court).

In a 2007 open letter to the States' Attorneys General after the Virginia Tech shooting concerning prosecutions under § 922(g)(4), the ATF instructed, "a 'commitment' means a formal commitment, not a voluntary stay. Excluded are stays for observation only. Nor does the term include a stay in a mental institution that never involved any form of adjudication by a lawful authority." Open Letter to the States' Atty's Gen., 2007 WL 9606857, at *2 (ATF May 9, 2007) Addressing the importance of due process, the ATF observed that when "a person has been adjudicated a mental defective or committed to a mental institution, the firearms disability is **permanent**." *Id.* at *3 (emphasis added). A "prohibited person" is someone "*adjudicated* to be a danger to self or others or lacking the mental capacity to contract or manage their own affairs." *Id.* (emphasis added). The category of "violent" and "dangerous" people like "lunatics," the "criminally insane," "active drug addicts," "drunkards," and "sexual predators" encompasses mental conditions that are neither brief nor fleeting.

The Government's general discussion of regulations used to confine the "mentally ill" in support of the premise that such laws are "presumptively lawful" does not fulfill the requirement under *Bruen* of identifying analogous historical traditions of permanently disarming people on a §

9.39 event – most particularly because there is no "finding" or "adjudication" of either "mental illness" or "dangerousness" under § 9.39 – only a preliminary allegation of one or both. At best, the judicial process under § 9.39 yields "reasonable cause" to retain a person for up to 15 days.

**CONCLUSION**

Plaintiff's motion for a preliminary injunction should be granted.

Dated: May 16, 2025
      Scarsdale, New York

                             THE BELLANTONI LAW FIRM, PLLC
                             *Attorney for Plaintiff*

By:      *Amy L. Bellantoni*
                             Amy L. Bellantoni
                             2 Overhill Road, Suite 400
                             Scarsdale, New York 10583
                             abell@bellantoni-law.com