UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
EDMUND J. SUSMAN, JR., and all similarly
situated individuals,

                                   Plaintiff,            1:24-cv-01281-LJV-LGF

      -against-


ANN MARIE T. SULLIVAN, M.D., in her
official capacity, ROSSANA ROSADO, in her official
capacity, PAM BONDI, in her official capacity,
KASH PATEL, in his official capacity,

                                   Defendants.
-------------------------------------------------------------------x


# PLAINTIFF'S REPLY MEMORANDUM OF LAW TO THE STATE DEFENDANTS IN FURTHER SUPPORT OF HIS SECOND MOTION FOR A PRELIMINARY INJUNCTION


**THE BELLANTONI LAW FIRM, PLLC**
*Attorneys for Plaintiff*
2 Overhill Road, Suite 400
Scarsdale, New York 10583

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ................................................................................................. i

I. *EX PARTE YOUNG* EXCEPTION APPLIES: PROSPECTIVE RELIEF IS AVAILABLE ..... 1

II. PLAINTIFF'S CONSTITUTIONAL HARMS ARE TRACEABLE TO SULLIVAN AS THE STATE OFFICIAL WITH AUTHORITY TO REMEDY PLAINTIFF'S CONSTITUTIONAL VIOLATIONS UNDER MHL § 7.09(j) ................................................................................ 1

II. PLAINTIFF'S INJURIES ARE DIRECTLY TRACEABLE TO NEW YORK – AND COMMISSIONER SULLIVAN HAS THE AUTHORITY TO REMOVE THE DATA .............. 4

IV. PLAINTIFF IS SUFFERING AN ONGOING CONSTITUTIONAL VIOLATION .............. 4

V.  PLAINTIFF IS NOT REQUIRED TO SEEK A CERTIFICATE OF RELIEF ....................... 5

VI.  PLAINTIFF HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ................................. 6

    A. Disarmament Based on a § 9.39 Admission Implicates the Second Amendment, and There is No Bright-Line Objective Factor to the Restoration of Rights ........................... 6

    B.  The State Failed to Identify any Historical Tradition Justifying Disarmament Based on a § 9.39 Admission ................................................................................................ 7

    C. Plaintiff's Temporary Disarmament Occurred While He Was in the Hospital  ........ 10

VII. SECOND AMENDMENT VIOLATIONS CONSTITUTE IRREPARABLE HARM  ...... 10

VIII. PLAINTIFF HAS ARTICLE III STANDING ................................................................... 12

IX. THE EQUITIES AND PUBLIC INTEREST SUPPORT AN INJUNCTION ...................... 12

CONCLUSION .......................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Andrews v. State*,
  50 Tenn. 165 (1871) ............................................................................................... 6

*Antonyuk v. Bruen*,
  624 F. Supp. 3d 210 (N.D.N.Y. 2022) .................................................................. 11

*Antonyuk v. James*,
  120 F.4th 941 (2d Cir. 2024) ................................................................................ 12

*Arizona Dream Act Coalition*,
  757 F.3d 1053 (9th Cir. 2014) .............................................................................. 13

*Corporacion de Mercadeo Agricola v. Mellon Bank Int'l*,
  608 F.2d 43 (2d Cir. 1979) ..................................................................................... 4

*Dean v. Town of Hempstead*,
  527 F. Supp. 3d 347 (E.D.N.Y. 2021) .................................................................... 4

*Duncan v. Becerra*,
  265 F. Supp. 3d 1106 (S.D. Cal. 2017) ................................................................ 12

*Hardaway v. Nigrelli*,
  636 F. Supp. 3d 329 (W.D.N.Y. 2022) ................................................................. 11

*Hobby Lobby Stores, Inc. v. Sebelius*,
  723 F.3d 1114 (10th Cir. 2013) ............................................................................ 12

*J.S.R. by & through J.S.G. v. Sessions*,
  330 F. Supp. 3d 731 (D. Conn. 2018) ................................................................... 13

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................ 4

*Mahoney v. U.S. Dep't of the Interior*,
  682 F. Supp. 3d 265 (E.D.N.Y. 2023) .................................................................... 3

*Ms. L. v. U.S. Immigr. & Customs Enf't*,
  415 F. Supp. 3d 980 (S.D. Cal. 2020) .................................................................. 13

*Ms. L. v. U.S Immigr. & Customs Enf't ("ICE*,
  310 F. Supp. 3d 1133 (S.D. Cal. 2018) ............................................................... 13

*Rosenberg v. Pliler*,
  2021 WL 6014938 (S.D.N.Y. Dec. 20, 2021) ..................................................... 10

*Sedita v. United States*,
  763 F. Supp. 3d 63 (D.D.C. 2025) ......................................................................... 6

*Smith v. Hollingsworth*,
  2016 WL 4357489 (D.N.J. Aug. 15, 2016) ......................................................... 11

*Teixeira v. Cnty. of Alameda*,
  873 F.3d 670 (9th Cir. 2017) .................................................................................. 6

*United States v. Decastro*,
  682 F.3d 160 (2d Cir. 2012) ................................................................................. 12

*United States v. Rahimi*,
  602 U.S. 680 (2024) ............................................................................................... 8

*United States v. Veasley*,
  98 F.4th 906 (8th Cir.) ..................................................................................... 9, 10

**Statutes**

18 U.S.C. § 922(g)(3) ..................................................................................................... 9
18 U.S.C. § 922(g)(4) ............................................................................................. Passim
18 U.S.C. § 922(g)(8) ..................................................................................................... 8
34 U.S.C. § 40915(b) ................................................................................................... 11

**Regulations**

14 N.Y.C.R.R. § 543 ..................................................................................................... 11
14 NYCRR 543 ............................................................................................................ 12
27 C.F.R. § 478.11 .......................................................................................................... 3

# I. *EX PARTE YOUNG* EXCEPTION APPLIES: PROSPECTIVE RELIEF IS AVAILABLE

As outlined below, Sullivan has the authority to cancel and remove information previously reported to NICS. So, whether a finding is reached that (i) §922(g)(4) is unconstitutional as applied to § 9.39 admissions, or (ii) MHL § 7.09(j) is unconstitutional as applied to § 9.39 admissions, this Court may fashion injunctive relief against Sullivan to cancel and otherwise remove the previously-transmitted data concerning Plaintiff from the NICS Index.

# II. PLAINTIFF'S CONSTITUTIONAL HARMS ARE TRACEABLE TO SULLIVAN AS THE STATE OFFICIAL WITH AUTHORITY TO REMEDY PLAINTIFF'S CONSTITUTIONAL VIOLATIONS UNDER MHL § 7.09(j)

The New York State Legislature decided which mental health events will be classified as firearms disqualifiers under 18 U.S.C. § 922(g)(4) and reported by mandate of MHL § 7.09(j). The list of enumerated events is codified in § 7.09(j), which includes transmission of the "names and other non-clinical identifying information of persons who have been involuntarily committed to a hospital pursuant to article 9 (Hospitalization of Persons With a Mental Illness)…"

By mandate of § 7.09(j), all § 9.39 admissions must be reported to NICS as disqualifying events under § 922(g)(4). The only state official identified in § 7.09(j) as having the authority over the data and the reporting process is Commissioner Sullivan: "(1) The commissioner, in cooperation with other applicable state agencies, shall collect, retain or modify data or records, and shall transmit such data or records to [DCJS and CJIS]." *See,* § 7.09(j).

CJIS, the Criminal Justice Information Services Division of the FBI, oversees the NICS Section, which administers NICS [SF ¶ 8-9]. The NICS Index receives disqualifying information from local, state, tribal and federal agencies, which are assigned Originating Agency Identifiers ("ORI") [SF ¶¶ 9-12].

Sullivan, through OMH, also maintains its own separate NICS database of persons disqualified from receiving or possessing a firearm due to an involuntary hospital admission. OMH's NICS Database receives involuntary commitment data from DOH and subsequently bundles that data into an automatic batch process which is forwarded to the NICS Index through a process facilitated by the New York State Office of Information Technology Services [SF ¶ 24].

The involuntary commitment data (contained in OMH's NICS Database) that is sent to the NICS Index is exclusively maintained by OMH's Central Files and Medical Records Office and the New York State Information Technology Service, is only accessible using OMH's software, and only OMH's NICS Office can use that software [SF ¶ 25]. OMH's NICS Database is used by OMH to send electronic records of involuntary admissions to the NICS Index, and to process cancellation requests received from DOH and OMH [SF ¶ 26]. Stated differently, OMH has the ability to cancel information previously sent to NICS and remove NICS entries [SF ¶ 30].

Plaintiff is seeking injunctive relief here; Sullivan, as the Commissioner of OMH, is properly identified by Plaintiff as the state official with authority to cancel MHL § 9.39 entries in the NICS Index, including Plaintiff's [*see,* SF ¶¶ 27-30]. While the Stipulated Facts confirm that, as an Article 28 hospital, ECMC is responsible for correcting its own 'erroneous information,' there is no factual dispute over whether Plaintiff was admitted to ECMC under § 9.39.[1] He was and ECMC was required to report the admission. But Sullivan is the state actor with the ability to cancel and otherwise remove information previously transmitted to the NICS index. As the Commissioner of OMH, she has the ability to remove NICS Index entries identifying a person as 'prohibited' and, once removed, subsequent queries submitted to NICS will not return any

---

[1] Even so, under Federal Rule 65, non-parties acting in concert with an enjoined defendant, given proper notice, may also be enjoined, which would include the Article 28 hospitals.

responsive information from that NICS Index entry during future prospective firearm transfers [SF ¶ 30].

Dismissing the claim against Sullivan on the ground that she did not cause Plaintiff's constitutional injury is disingenuous in a case seeking injunctive relief. Just because the State's 'reporting train' runs automatically with no one at the controls, does not remove this Court's equitable power to order the conductor to shut it down.

And, unlike the plaintiffs in *Mahoney v. U.S. Dep't of the Interior*, 682 F. Supp. 3d 265, 269 (E.D.N.Y. 2023) Plaintiff's ongoing constitutional harms are "not the result of the independent action of some third party not before the court." There is no federal statute that requires New York to report § 9.39 admissions. In fact, the federal government has not conducted any independent review of MHL § 9.39 to ascertain whether it falls within the scope of § 922(g)(4) [SF ¶ 113]. Under 27 C.F.R. § 478.11, the term "committed to a mental institution" "does not include a person in a mental institution for observation or a voluntary admission to a mental institution."

New York's classification of § 9.39 admissions as firearms-disqualifying events violates the Second Amendment, as discussed below. And because the sole source of the federal government's (CJIS/NICS) information concerning ***any*** hospital admission in New York is New York State, should the Court find that there is no historical tradition analogous to disarmament based on an allegation of mental illness resolved by a brief and temporary hospital admission, then any perceived obligation under § 922(g)(4) New York has to report § 9.39 admissions to NICS will be resolved. Should this Court find that § 922(g)(4) does require § 9.39 admissions to be reported to NICS, the federal government is now before the Court to justify the constitutionality of its application of § 922(g)(4) to § 9.39 admissions. Either way, Plaintiff's harms are redressable by Sullivan who has statutory authority to provide Plaintiff with the relief he seeks, which is an

injunction directing the purge of § 9.39 information transmitted to NICS[2] and the permanent injunction of § 7.09(j) as applied to § 9.39 admissions.

**III. PLAINTIFF'S INJURIES ARE DIRECTLY TRACEABLE TO NEW YORK – AND COMMISSIONER SULLIVAN HAS THE AUTHORITY TO REMOVE THE DATA**

New York's transmission to NICS of Plaintiff's personal identifying information as a 'prohibited person' admission and the State's refusal to remove his information from the NICS Index is a cause of Plaintiff's constitutional injury. Where the plaintiff is the object of the action or foregone action, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992); *see also, Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 403 (E.D.N.Y. 2021) (so long as the defendants have engaged in conduct that may have contributed to causing the injury, it would be better to recognize standing).

Because § 7.09(j) defines which events OMH must report, Plaintiff's disarmament is directly traceable to Sullivan, as the OMH Commissioner and head of the government agency charged with cancelling and otherwise removing information from the NICS Index.

Likewise, Plaintiff's harms are redressable by a court order directed at Sullivan.

**IV. PLAINTIFF IS SUFFERING AN ONGOING CONSTITUTIONAL VIOLATION**

The State argues that, because the disqualifying information about Plaintiff has already been transmitted to NICS, there is nothing Sullivan can be ordered to do. But the 'hot potato' defense does not insulate New York from its responsibility to remedy the harms its statute created.

---

[2] The 'law of the case' doctrine does not foreclose this Court from reconsidering its prior conclusions. *See, Corporacion de Mercadeo Agricola v. Mellon Bank Int'l*, 608 F.2d 43, 48 (2d Cir. 1979) (a judge always has the power to change a ruling; further reflection may allow a better informed ruling in accordance with the conscience of the court). That said, this second motion for a preliminary injunction does provide the Court with additional facts and information in the parties' Stipulated Facts.

Plaintiff is continuing to be harmed because he will continue to fail every NICS check, be subject to criminal penalties for possessing firearms, and be pulled aside for secondary inspection at ports of entry whenever he travels until his information is canceled and otherwise removed from the NICS Index and OMH's own database [SF ¶¶16-19, 24, 54, 114], which Sullivan has the authority to do [SF ¶ 17-19; 24-30]. Placing the transmission of disqualifying information on "autopilot" does not mean that New York State is not causing the harm.

This is particularly so because § 9.39 reporting is required by § 7.09(j)), not a federal statute. New York may view § 9.39 admissions as firearms-disqualifying events, but the federal government has not independently assessed whether § 9.39 admissions fall within the scope of § 922(g)(4) [SF ¶ 113]. All NICS knows is that New York considers Plaintiff to be firearms-disqualified under § 922(g)(4). Even in their opposition brief, the federal defendants have not specifically weighed in on the application of § 922(g)(4) to § 9.39 admissions.

## V. PLAINTIFF IS NOT REQUIRED TO SEEK A CERTIFICATE OF RELIEF

Notwithstanding subjective opinions of what Plaintiff should do and could have done[3] [State Br. at 6], Plaintiff has no obligation to apply for a COR. The State fails to identify any legal authority to the contrary. The mere existence of an avenue to restore one's rights does not preclude a constitutional challenge to the statutes that took them away in the first place. Nor is there any "comprehensive enforcement scheme" at work here [State Br. at 11] – just a state reporting statute and a federal criminal statute – and Plaintiff has the right to challenge their constitutionality.[4]

---

[3] This case also does not involve conflicting statutory interpretations [Gov't Br. at 14]. It involves holding the state and federal defendants to their burden of proving up an historical analogue for MHL § 9.39 – a brief and temporary admission based on an allegation of mental illness and dangerousness - not some general and anecdotal discussion of 'disarming the mentally ill.'

[4] Likewise, the ripeness of Plaintiff's Second Amendment claims under §1983 is not thwarted for lack of exhausting administrative remedies [State Br. at 12].

Adopting the State's view would permanently insulate § 922(g)(4) and MHL 7.09(j) from constitutional scrutiny – a result repugnant to the Constitution.

## VI. PLAINTIFF HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS

### A. Disarmament Based on a § 9.39 Admission Implicates the Second Amendment, and There is No Bright-Line Objective Factor to the Restoration of Rights

There is no 'sliding scale' of Second Amendment violations. Disarming an individual based on a § 9.39 admission implicates the Second Amendment and requires the government to justify its regulations.

The parties agree that Plaintiff is barred from acquiring firearms and ammunition; every NICS background check for the purchase of firearms and/or ammunition will result in a "Deny" because Plaintiff was reported to the federal government and continues to be identified as a "prohibited person" under 18 U.S.C. § 922(g)(4) [SF ¶¶ 8-16; 104-110].[5]

The NICS denial of Plaintiff's handgun purchase alone implicates conduct protected by the plain text of the Second Amendment. See, *Sedita v. United States*, 763 F. Supp. 3d 63, 76 (D.D.C. 2025) ("As a necessary ancillary to the right of possession, the right of acquisition is protected, too. If it were not, the letter of the Second Amendment would be stripped of all substance.") citing, *Andrews v. State*, 50 Tenn. 165, 178 (1871) ("The right to keep arms, necessarily involves the right to purchase them."); *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) ("[T]he core Second Amendment right to keep and bear arms for self-defense wouldn't mean much without the ability to acquire arms.") (cleaned up). "One can only keep if one first obtains, and thus the obtainment is protected just as much as the keeping." *Sedita*, 763 F. Supp. 3d at 76.

---

[5] New York has no bright-line return of firearm rights once they have been terminated, whether for a hospitalization or otherwise.

### B. The State Failed to Identify any Historical Tradition Justifying Disarmament Based on a § 9.39 Admission

The easy way out of this motion is to cherry pick terms like "involuntary" – a word that does not appear anywhere in the title or text of MHL § 9.39 – and "commitment" from state cases analyzing due process claims (and the federal cases mimicking their language) - none of which conducted an historical analysis under a Second Amendment challenge to reach the conclusion that disarmament based on a § 9.39 admission fits within this Nation's traditions of disarming the "mentally ill."

But the intellectually honest approach to this constitutional challenge would begin with the text of § 9.39 viewed against the regulations proffered by the State as historical analogues. None of the State's analogues involve brief and temporary contact with a hospital for mental health purposes or a mere *allegation* that an individual is both mentally ill and dangerous. Classifying a § 9.39 admission as falling within the *sui generis* of events warranting disarmament is inconsistent with the Second Amendment and the State has failed to prove otherwise.

The State's analysis begins with a false premise – presuming that New York's idea of a "commitment" as that term is used to describe § 9.39 admissions comports with the historical understanding of the type of person "committed" in the Founding Era. The State's analogues paint a picture of substantial mental degradation and a level of permanency, not a fleeting condition that is resolved by a brief hospital visit, like Plaintiff's § 9.39 admission.

And, to the extent that a temporary disarmament by a hospital admission is warranted to evaluate an individual having an acute event, § 9.39 *is* the temporary period of disarmament based on reasonable cause, like the constitutionally sanctioned temporary detention of an individual under the Fourteenth Amendment to evaluate him/her for mental illness and dangerousness.

But where that person is evaluated and does not thereafter meet the standard for a "commitment" under New York's "Involuntary Admission" statutes, MHL § § 9.27 and 9.37, and is discharged, s/he also does not meet the standard for disarmament under the Second Amendment.

The State argues that Plaintiff fits within the class of "institutionalized people" historically disarmed, and recounts exclusions of the "mentally ill" from militia service. Clearly a poor choice of analogy in this case [State Br. at 17]. Plaintiff honorably served this Country - before and after –his brief 2015 admission - in exemplary fashion, armed with a firearm, and without incident. Plaintiff would not have been excluded from the militia then - nor was he excluded from either the military or his role as a federal law enforcement officer. Plaintiff he passed every intensive background check required to achieve high-level security clearance, including Top Secret Clearance.[6] [DE 30 (FAC) at ¶¶ 93-105].

The State goes on to cite laws targeting "idiots, lunatics, common drunkards, vagabonds, paupers, and persons convicted of any infamous crime…" [State Br. at 17] – all irrelevant to this case. Plaintiff has never been adjudicated as "mentally ill." At most, Plaintiff was *alleged* to have a mental illness – that is the extent of the label created by § 9.39. Section 9.39 is not a "finding" or "adjudication of mental illness."

In upholding the constitutionality of § 922(g)(8) in *Rahimi*, the Supreme Court specifically noted that § 922(g)(8), like the analogous surety and going armed laws, "applies only ***once a court has found*** that the defendant represents a credible threat to the physical safety of 1902 another. *United States v. Rahimi*, 602 U.S. 680, 698–99 (2024) (emphasis added). "[922(g)(8) matches the

---

[6] This Court has noted Plaintiff's exemplary service to this Nation, and is, respectfully, urged to at least grant an injunction ***as-applied to Plaintiff***. A review of this motion from the 'as applied' perspective inarguably warrants the issuance of a preliminary injunction during the pendency of this case. Even the Government argues that Plaintiff is 'mentally fit' to possess firearms by day (but not off-duty) [Gov. Br. at 5-9] – as if we reside in Idiocracy.

surety and going armed laws, which involved *judicial determinations* of whether a particular defendant likely would threaten or had threatened another with a weapon."

And while § 9.39 does offer notice of the right to a court hearing for people seeking to be released, the plain text of the statute declares that a court order continuing the person's confinement "***shall not be deemed to be an adjudication that the patient is mentally ill***"[7] (emphasis added).

Even if Plaintiff had requested a discharge hearing, at some point, during his 4-day stay, which he did not because he was voluntarily admitted [DE 30 at ¶ 121], a court order continuing his confinement would not have constituted a "formal finding" that he is either "mentally ill" or "dangerous" [*see,* 9.39(b)].

The State's reliance on *United States v. Veasley*, 98 F.4th 906 (8th Cir.), cert. denied, 145 S. Ct. 304 (2024), which involved § 922(g)(3), not § 922(g)(4), actually supports Plaintiff's position. First, the Eighth Circuit confirmed that the "historical record" showed that "confinement of the mentally ill" was performed by the authority of "justices of the peace." *Veasley*, 98 F.4th at 916 [*see also,* State Br. at 19-20]. An *ex parte* hospital admission, like MHL § 9.39, does not conform to this Nation's historical traditions of disarmament.

In Colonial America, people who were both "mentally ill and dangerous" were disarmed by virtue of being confined. *Veasley*, 98 F.4th 913-914. The types of people confined were the "furiously mad," "unfit to go at large," "lunatic," "madmen" [*Id.*] - the type of afflictions that are neither temporary nor fleeting. Society locked up people who were out-of-their-mind. Next came mental institutions; "those afflicted with mental disease were generally treated as if they had been

---

[7] "If it be determined that there is such reasonable cause, the court shall forthwith issue an order authorizing the retention of such patient for any such purpose or purposes in the hospital for a period not to exceed fifteen days from the date of admission. Any such order entered by the court shall not be deemed to be an adjudication that the patient is mentally ill, but only a determination that there is reasonable cause to retain the patient for the purposes of this section."

9

thereby stripped of all human attributes, together with their rights and privileges as human beings." *Veasley*, 98 F.4th at 915 (cleaned up). By the late 1800s, laws arose making it illegal to sell or give weapons to "any person or persons of unsound mind." *Id.* at 915.

Still, no discussion of people who are only *alleged* to be mentally ill and dangerous, like Plaintiff.[8] By Plaintiff's discharged from the hospital, a psychiatrist determined that he did not need to be involuntarily confined. Plaintiff was never determined to be "insane" "lunatic" or an "idiot" such that he should be disarmed upon discharge. There is simply no comparison between the types of people historically disarmed for mental illness and Plaintiff.

The availability of a 'relief' process *after* someone has been disarmed based on an event that lacks historical support does not satisfy the government's burden under *Bruen* and *Rahimi*. A modern-day COR process is *not* an historical analogue.

### C. Plaintiff's Temporary Disarmament Occurred While He Was in the Hospital

The State's claim that temporary disarmament is "presumptively constitutional" rests on a flawed premise. *Rahimi* confirmed the constitutionality of temporary disarmament after a *court adjudication* of dangerousness has taken place. That said, Plaintiff was temporarily disarmed during the time period that he was admitted to the hospital under § 9.39.

## VII. SECOND AMENDMENT VIOLATIONS CONSTITUTE IRREPARABLE HARM

The only cases cited by the State to claim that Plaintiff has not suffered "irreparable harm" involve federal inmates who are required to follow the Bureau of Prison's four-step administrative review process before "seeking formal review of an issue relating to any aspect of his/her confinement" [State Br. at 24-25 citing, *Rosenberg v. Pliler*, No. 21-CV-5321 (VEC), 2021 WL

---

[8] And while the Supreme Court commented on the constitutionality of NICS checks, Plaintiff is not challenging the NICS background check requirement [State Br. at 22]. He is, however, challenging the information and regulations relied on to create the 'prohibited' record, which are subject to justification under the *Bruen* test.

6014938, at *4 (S.D.N.Y. Dec. 20, 2021) and *Smith v. Hollingsworth*, No. 14-1778 (NLH), 2016 WL 4357489, at *1 (D.N.J. Aug. 15, 2016)].

But Plaintiff is not a federal inmate. Nor has the State identified anything other than its desire, the Government's desire – and this Court's desire – for Plaintiff to take an "off-ramp" from this Second Amendment challenge and apply for a Certificate of Relief [State Br. at 24 (quoting PI Transcript at 36:10-18 chastising Plaintiff for "wasting time" by not applying for a COR, when the preliminary injunction Plaintiff applied for would have already provided Plaintiff with relief); Gov. Br. at 15].

So, because the administrative rules of the Bureau of Prisons do not apply, the state and federal defendants were required to identify some other legal authority requiring a § 1983 plaintiff in a Second Amendment challenge to exhaust administrative remedies before challenging state and federal statutes other than the Certificate of Relief statutes. Neither 34 U.S.C. § 40915(b), which defines the state court standard for reviewing the denial of a COR application, nor 14 N.Y.C.R.R. § 543, contain any limiting language.

Violations of the Second Amendment constitute irreparable harm. *Hardaway v. Nigrelli*, 636 F. Supp. 3d 329, 349 (W.D.N.Y. 2022); *see also*, *Antonyuk v. Bruen*, 624 F. Supp. 3d 210, 259–60 (N.D.N.Y. 2022) (presumption of irreparable harm arising from the Second Amendment violations, including "diminished safety in all the locations that he currently carries his concealed handgun that he will not be able to carry it" "if an injunction is not issued.").

It is undisputed that: (i) Plaintiff is barred from possessing and purchasing firearms and ammunition by § 922(g)(4) based on Plaintiff's 2015 admission to a hospital under MHL § 9.39 [SF 56 at ¶¶ 95-98]; (ii) Plaintiff is on administrative leave from his employment as a federal law

11

enforcement officer and has no "official job duties" [SF ¶ 54] – thus, he is not subject to the § 925A exemption. Plaintiff will continue to suffer irreparable harm in the absence of an injunction.

Plaintiff's constitutional harm does not vanish simply because an administrative process exists that neither guarantees the restoration of Plaintiff's Second Amendment rights nor cures the State's unconstitutional reporting statute. And this Court already found that Plaintiff "undoubtedly has suffered an "injury in fact." *Susman,* at *8. *See also, Antonyuk v. James*, 120 F.4th 941, 977 (2d Cir. 2024), cert. denied, No. 24-795, 2025 WL 1020368 (U.S. Apr. 7, 2025) (a plaintiff suffers an injury-in-fact if the defendant's allegedly unlawful conduct impairs that interest).

**VIII. PLAINTIFF HAS ARTICLE III STANDING**

Neither *Antonyuk v. James,* 120 F.4th 941 (2d Cir. 2024) nor *United States v. Decastro*, 682 F.3d 160 (2d Cir. 2012) are analogous. If Plaintiff were challenging the Certificate of Relief statute, as the plaintiffs in those cases challenged the constitutionality of the state handgun licensing statute, the cases may have relevance. But Plaintiff is not claiming that the Certificate of Relief statute (14 NYCRR 543) is unconstitutional. Rather, he is challenging (i) a federal criminal statute, 18 U.S.C. § 922(g)(4), as applied to MHL § 9.39 admissions, and (ii) the state reporting statute, MHL § 7.09(j), as applied to MHL § 9.39 admissions. Article III standing requires Plaintiff to have suffered an injury under the statutes that he is challenging – not some completely separate statute. The State's apples-to-oranges analogy should be rejected.

**IX. THE EQUITIES AND PUBLIC INTEREST SUPPORT AN INJUNCTION**

It is always in the public's interest to enjoin unconstitutional laws. *Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1136 (S.D. Cal. 2017), aff'd, 742 F. App'x 218 (9th Cir. 2018) (granting preliminary injunction of California's magazine ban statute) citing, *Hobby Lobby Stores, Inc. v.*

*Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), aff'd sub nom., *Burwell v. Hobby Lobby Stores, Inc.*, ⸺ U.S. ⸺, 134 S.Ct. 2751, 189 L.Ed.2d 675 (2014).

When a plaintiff establishes a likelihood that the defendants policy violates the U.S. Constitution, he has also established that both the public interest and the balance of the equities favor a preliminary injunction.'" *J.S.R. by & through J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 743 (D. Conn. 2018) citing, *Ms. L. v. U.S Immigr. & Customs Enf't ("ICE")*, 310 F. Supp. 3d 1133, 1146 (S.D. Cal. 2018), modified, 330 F.R.D. 284 (S.D. Cal. 2019), and enforcement granted in part, denied in part sub nom. *Ms. L. v. U.S. Immigr. & Customs Enf't*, 415 F. Supp. 3d 980 (S.D. Cal. 2020) quoting, *Arizona Dream Act Coalition*, 757 F.3d 1053, 1069 (9th Cir. 2014) (balance of equities favors preventing

## CONCLUSION

Plaintiff's motion for a preliminary injunction should be granted, along with such other further and different relief as this Court may deem just and proper.

Dated: May 16, 2025
     Scarsdale, New York

                            THE BELLANTONI LAW FIRM, PLLC
                            *Attorney for Plaintiff*

By:    *Amy L. Bellantoni*
        Amy L. Bellantoni
        2 Overhill Road, Suite 400
        Scarsdale, New York 10583
        abell@bellantoni-law.com